88 So.2d 903 (1956)
MASON W. ALGER, JEFFERSON DAVIS, W.J. PLOTNER, FRED Z. PELLETIER, JOHN CASE AND BABBIN & HARMON, INC., A NEW YORK CORPORATION, A PARTNERSHIP DOING BUSINESS AS THE A, B AND C COMPANY, AND EARL K. HARVEY, APPELLANTS,
v.
FREDERICK C. PETERS AND BERENICE TODD PETERS, APPELLEES.
Supreme Court of Florida, En Banc.
April 4, 1956.
Rehearing Denied July 31, 1956.
*905 Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for Mason W. Alger.
J.M. Flowers, Miami, for the remaining appellants.
McCune, Hiaasen, Kelley & Crum, Fort Lauderdale, for appellees.
THORNAL, Justice.
The appellants named above were the "six tenants" against whom a contempt decree was entered on April 22, 1955, as described in our opinion filed this date in the case of South Dade Farms, Inc., v. Peters, Fla., 88 So.2d 891. We refer the reader to the recital of facts and statement of the case in our opinion in South Dade Farms, Inc., v. Peters, in order to present the factual basis for this opinion with reference to the six tenants who are appellants herein.
Appellants assign fourteen points for reversal. We think it necessary to consider only their contentions that the lower court was without jurisdiction to enter the original injunction decree of June 5, 1953, as to them, that the injunction decree did not bind them, and that said decree was an attempted adjudication of their property rights without due process of law.
In reaching our conclusion herein we are reminded that the six tenants were not parties to the original cause. They paid valuable cash considerations for the leases they received in good faith prior to the entry of the final decree. There is no evidence of collusion either among themselves or with South Dade Farms, Inc., the defendant in the main case. The leases to them were executed pursuant to the annual custom recognized by all parties and in accord with annual commitments for renewal of the year-to-year leases subject only to the selection of lands by appellee Peters on or before May 1st of each year. This custom had been recognized for several years. The Chancellor based the contempt decree against the appealing tenants upon a finding that they planted the potatoes with notice of the "comprehensive all-inclusive contract" of April 26, 1951, and that by planting the potatoes they interfered with the contract rights of the appellees and further that in November, 1953, (six months after they obtained their leases) an agent of Peters told them about the injunctive factors of the decree of June 5, 1953.
We emphasize again that in reaching the conclusion which we have, we are not undertaking to pass upon the rights of the parties in an action for breach of contract. Whether the tenants took the leases with knowledge of the contractual rights of Peters and whether this created any liability between them under the circumstances is not our concern on this appeal and we do not pass upon it. We are here dealing entirely with the isolated problem of whether the appellants committed acts which constituted contempt of court. We could possibly dispose of this appeal by a single reference to the extended quotation from the opinion of this court in the case of Smith v. Whitfield and Sanders, 38 Fla. 211, 20 So. 1012, set out in our opinion in South Dade Farms, Inc., v. Peters, supra. However, the appellees insist that the entry of the contempt decree against the tenants is authorized by former Equity Rule 72, present Equity Rule 3.18, Rules of Civil Procedure, F.S.A., which reads as follows:
"Every person, not being a party in any cause, who has obtained an order, *906 or in whose favor an order shall have been made, may enforce obedience to such order by the same process as if he were a party; and every person, not being a party against whom obedience to any order of the court may be enforced, shall be liable to the same process for enforcing obedience to such orders as if he were a party."
Historically, this rule has been in effect either in the form of a rule or statute since 1842 when a substantially similar rule was adopted by the Supreme Court of the Territory of Florida. For all practical purposes, it is the same as Federal Rule 71, 28 U.S.C.A., which has its origin in the Federal Judiciary Act of September 24, 1789, 1 Stat. 73. We mention this to point out that the rule was in effect when the opinion of this court was rendered in Smith v. Whitfield and Sanders, supra, in 1896. An application of the rule in the manner contended for by the appellees would lead us to a conclusion that every person whomsoever is bound by an injunctive decree regardless of whether the court entering the decree ever had jurisdiction of the party and without regard to the effect of the decree on the property rights of the individual despite the absence of due process in the orderly course of a judicial proceeding. We cannot logically be led to such a holding, and we do not find that the rule has been so applied either in the federal or the state courts.
There can be no doubt that the appellants acquired a property right under the six leases which they obtained before the decree was entered and for which they admittedly paid substantial sums of money. Prior to the entry of the decree, the execution of these leases was made known to the appellees as well as to the Chancellor. If the appellees had had any desire or intention to obtain an adjudication with reference to the property rights of these tenants, it would have been a relatively simple matter to have brought them into the case and given them an opportunity to assert their rights in an orderly fashion according to the dictates of due process. Instead of doing this the rights of these appellants under the leases were completely ignored. They were not made parties to the main case by the service of process or in any other fashion. It is so fundamental to our concept of justice that a citation of supporting authorities is unnecessary to hold that the rights of an individual cannot be adjudicated in a judicial proceeding to which he has not been made a party and from which he has literally been excluded by the failure of the moving party to bring him properly into court. Under our system a man's rights cannot be disposed of or otherwise determined by a judicial decree entered in absentia.
Under the particular leases in question the appellants were not acting for or in behalf of South Dade Farms, Inc., the defendant in the main case. South Dade Farms, Inc. did not represent them in the litigation. The appellants enjoyed independent property rights under the leases that could not possibly be adjudicated or otherwise tampered with absent service upon them that would have brought them into the cause and subjected them to the jurisdiction of the court. As to their rights under these particular leases, the final decree of June 5, 1953, was brutum fulmen and they were not bound to recognize it.
An injunctive decree is a personal decree and in entering it a court of equity is usually rendering an in personam judgment that acts on the person of the party affected. See 43 C.J.S., Injunctions, § 168, pp. 793 and 794; and 28 Am.Jur., Injunctions, Sec. 4, p. 199.
While it is true that an injunction decree may affect a particular res and to that extent may in some measure assume the proportion of a decree in rem that thereafter "runs with the land", we do not consider such an application of the decree before us as being justifiable insofar as the particular leases of these appellants are concerned. In the case at bar the rights of the appellants came into being before the decree was entered. If the leases to them had been executed after the decree, then *907 they would have acquired their property rights subject to the limitations of the decree. The latter, however, was not the case. Their rights were fixed and established before the decree was entered and they could not be deprived of them by the entry of a decree in a cause to which they were not parties. On the proper interpretation of Equity Rule 72 see Barron and Holtzoff, Federal Practice and Procedure, Sec. 1511; and Moore's Federal Practice, Sec. 71.04.
Concerning the enforcement of an injunction decree against one not a party to the cause, we can do no better than to refer to the case of Alemite Mfg. Corp. v. Staff, 2 Cir., 1930, 42 F.2d 832, from which we quote the following by no less an authority than Judge Learned Hand, to-wit:
"We agree that a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. This is well settled law. Ex parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110; Conkey Co. v. Russell, C.C., 111 F. 417; Wellesley v. Mornington, 11 Beav. 180, 181; Seaward v. Peterson, (1897) 1 Ch. 545. On the other hand no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him. Strictly, therefore, the addition of such words as the plaintiff here relies on, adds nothing to the decree. Without them any one is liable who knowingly does what the court has properly enjoined; with them nobody is liable who does not."
Appellees strongly urge that the contempt decree against the six tenants is supported by the opinion of this court in Savage v. Winfield, 152 Fla. 165, 11 So.2d 302. They quote the published headnote to sustain their position. Because of the apparent similarity between the case before us and the Savage case, as reflected by the recitation of facts in the dissenting opinion in the latter case, we have carefully examined the original record in the case cited. Our examination leads us to the conclusion that the Savage case is easily distinguishable on the facts. The original transcript shows that the injunction proceeding was brought against Charles Savage while he was a partner of Richard Savage. It further shows that the partnership continued during the injunction litigation and that Richard Savage who was ultimately cited for contempt of court actively participated in the defense of the main case. He furnished witnesses, paid a part of the attorney's fees and in fact at one point he appears to have actually engaged in the defense of the injunction suit. The facts in the Savage case clearly reveal that the defendant who was served with process was in reality defending the case for himself and his brother and partner who was not a nominal party but in a very real sense participated in the litigation.
Respondents likewise refer us to Ex parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110. The Lennon decision clearly illustrates the distinction which we make in the case at bar. Lennon was cited for contempt for violating an injunction decree against his employer. Although Lennon was not a party to the injunction suit he was an employee of the principal injunction defendant. He had full knowledge of the injunctive order and, contrary to the instructions of his employer, he wilfully ignored the injunction which was expressly made *908 binding upon him as an employee of the injunction defendant. The same distinction with reference to Ex parte Lennon, supra, was apparently noted by Judge Hand in Alemite Mfg. Corp. v. Staff, supra.
Appellants contend that the injunction decree of June 5, 1953, was absolutely void for the asserted reason that the appellants were "indispensable" parties to the original case and that the court could not proceed to a valid final decree in the absence of indispensable parties. They cite Martinez v. Balbin, Fla. 1954, 76 So.2d 488. On this point their position might be well founded if they were indispensable parties. However, we are of the view that while they were "necessary" parties to any proceeding involving an adjudication of their rights, they were not indispensable to an ultimate adjudication of the relative rights of Peters and South Dade Farms, Inc. In other words the original cause could properly proceed to a final decree as between Peters and South Dade Farms, Inc. Nevertheless, in the absence of the appellants as parties to that cause, their rights could not be determined by the final decree and as to them the decree was ineffective and of no force.
The rule announced in Milton v. City of Marianna, 107 Fla. 251, 144 So. 400, 402, is applicable. We quote from the opinion in that case as follows:
"The joinder of parties in equity is largely a matter of discretion of the court, and therefore the misjoinder of parties in such suits cannot always be detected with definiteness. The general rule in equity as to parties defendant is that, if the interest of those present and those absent are inseparable, the case must fail, but, if the interest of the parties present are separable, and the decree may be made without affecting the interest of those not present, the case may be decided on its merits as between those who are regularly before the court. 20 R.C.L. 703, § 44. See, also, Johnson v. Benbow, 93 Fla. 124, 111 So. 504; Mountein v. King, 75 Fla. 12, 77 So. 630."
See also Shields v. Barrow, 17 How. 129, 15 L.Ed. 158; and Moore's Federal Practice, Vol. 3, Sec. 19.07
If the record before us indicated that the appellants, regardless of tenancy or their absence from the main case, had acted in concert with South Dade Farms, Inc. in a wilful effort to stultify or otherwise disregard the decree of the Chancellor, or if the facts showed that they were merely the agents, employees or alter ego of South Dade Farms, our conclusion might be otherwise. On the contrary, this record clearly and definitely reveals that these appellants were acting independently in good faith, under claims of right for which they had paid substantial sums of money. Accepted standards of judicial procedure do not permit that these rights be taken away from them in a cause in which they had had no opportunity to defend.
As pointed out above, the matter comes before us on a direct appeal from the contempt decree. It is our view that the contempt decree herein was interlocutory in nature (see Sec. 59.02(3), Florida Statutes, F.S.A.) and the appropriate method of obtaining review thereof would be by petition for writ of certiorari. However, in accord with Section 59.45, Florida Statutes, F.S.A., the notice of appeal will be regarded by us as a petition for certiorari.
With this construction the prayer of the petition is granted, the contempt order appealed from is quashed and the cause is remanded with directions to dismiss the rule nisi.
DREW, C.J., and TERRELL, THOMAS and HOBSON, JJ., concur.
ROBERTS and O'CONNELL, JJ., not participating.