311 So.2d 164 (1975)
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,
v.
A.C. GROUNDS, Appellee.
No. S-441.
District Court of Appeal of Florida, First District.
April 16, 1975.
Rehearing Denied June 4, 1975.
*165 Benjamin W. Redding, Barron, Redding, Boggs & Hughes, Panama City, and Gurney, Gurney, & Handley, Orlando, for appellant.
Lefferts L. Mabie, Jr., and James F. McKenzie, Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellee.
McCORD, Judge.
This is an appeal from final judgment in a suit brought by appellee (appellant's insured) against appellant to recover the excess above appellee's insurance policy limits of a judgment entered against appellee and in favor of one Geoffrey Nevils. The final judgment here appealed is in the amount of $55,019.63 compensatory damages awarded by the jury's verdict (the amount of the excess judgment plus interest) plus an attorney's fee in the amount of $10,000 awarded to appellee's attorney by the court after hearing and testimony.
Among other points raised, appellant contends that the evidence presented in this cause was insufficient to support a finding of bad faith on its part in its failure to make timely settlements of the claims against appellee within the policy limits of his insurance coverage.
The accident which gave rise to this suit occurred on July 5, 1969, and involved an automobile owned and operated by Geoffrey Nevils. Nevils sustained an injury for which he asserted a claim against appellee and appellant (appellee's insurer). From the evidence, it is apparent that there was never any basis for contention that appellee was not liable for Nevils' injury and damage. The accident was investigated for appellant by an independent adjusting firm whose first report to appellant was to the effect that "it looks bad because our driver was charged with DWI." The letter referred to the claim as a "heavy bodily injury case" and warned the company (in August, 1969) that the attorney for the claimant would demand the policy limits.
Appellant was informed on September 15, 1969, that the government was asserting a claim under the Care Medical Recovery Act, 42 U.S.C. §§ 2651-2653 for medical expenses amounting to $2,985 as of September 4, 1969, and that medical treatment of Nevils was continuing. At the time of the accident, Nevils was a helicopter pilot student in Cadet training. In addition to the physical injuries, the accident put in jepordy Nevils flying career and commission.
*166 On December 5, 1969, five months after the accident, William Stafford, the attorney for the claimant, wrote a demand letter to appellant's adjuster, pointing out the injuries and damages suffered by Nevils and attaching all of the medical information that he had as of that date. The factual statements of the letter are supported by the record. It states in part as follows:
"This case appears to be one which certainly should be settled easily and promptly, inasmuch as the liability is so clear and your insured so obviously responsible for the accident, plus the fact that Mr. Nevils' injuries were so great.
As you know, your insured driver was charged with driving while intoxicated and had crossed all the way over to the other side of the wrong lane and struck my client head-on, after he had gotten all the way off the road to his right in an attempt to avoid the head-on collision.
Mr. Nevils suffered multiple lacerations of his face, forehead, neck, and mouth, contusions of his chest and abdomen, and fractures of both legs. There was a compound fracture of both the tibia and the fibula of his right leg and a transverse fracture of his left femur. An intramedullary rod was placed into his left femur through his hip and he advised that this will be removed approximately next July, eight months from now. The metal plate which is screwed into his right shinbone is permanent, but is causing trouble and becoming loosened. He has his right leg in a cast which enables him to bear all of his weight on his right thigh and knee as he is unable to bear weight on his left leg. This necessarily makes ambulation difficult but he is able to get around on crutches at this time.
Following the accident he remained at Pensacola Naval Air Station hospital for two and one-half months and then was sent to Martin Army Hospital in Ft. Benning, Georgia where he has remained hospitalized until now.
Mr. Nevils was in the flight program, completing his training as a helicopter pilot. He has been terminated or washed out completely as a helicopter pilot although he almost completed his training.
It is obvious that the Government's claim for remedial medical care and treatment will amount to many thousands of dollars, although we do not have the figure at this time. In addition to the substantial medical expense, Mr. Nevils has been deprived of all his flight pay, which is an additional fifty percent of his base pay, as well as being deprived of promotion and commission upon completion of his flight training.
While it will be several more months before the estimate or extent of his permanent disability is determined, it is probable at this time that he may have some functional impairment.
The value of this case at the hands of a jury would be many thousands of dollars, far in excess of a minimum insurance policy. However, in order to settle the case at this time, so Mr. Nevils can get the benefit of an early settlement without the necessity of referring this matter to another lawyer for the filing of suit, we hereby offer to accept the full policy limits of the liability insurance policy applicable to the automobile and driver in full settlement of this claim. This would include also the claim of the Government, with whom we will settle directly.
In view of the fact that more than five months have passed since the accident and we have had ample opportunity to investigate the same, we would like to have an early reply to this offer and will hold this open for a period of two weeks from this date or until December 19. I am enclosing copies of the clinical record and radiographic reports which support our statements as to the injuries, fractures, et cetera."
*167 As a predicate to the two-week offer to settle for the policy limits, Mr. Stafford mentioned that he had been appointed U.S. Attorney and had been diligently attempting to conclude for his private clients those cases which he could settle for them and was arranging to refer to other counsel those which could not be concluded; that, if the case could not be settled for the full policy limits within the two week period, it would be necessary to refer it to other counsel. The adjuster forwarded Mr. Stafford's letter to appellant and appellant made no response to the offer until January 20, 1970, more than a month after the two-week period for acceptance had terminated. Appellant did not advise its insured, appellee, of the settlement offer.
Mr. Stafford testified that he called the adjuster on several occasions (in the interim from the time of the offer until he finally heard from appellant) trying to get a response and asked the adjuster to at least find out what the policy limits were. The adjuster ultimately called him on January 20, 1970, and told him that he had heard from the company, and they would pay $10,000. He did not reveal the policy limits ($20,000). Mr. Stafford asked him to write him a letter on it, and Stafford then submitted the letter to Nevils. Stafford received a reply from Lefferts L. Mabie, Jr., who, on Stafford's reference, had taken over representation of Nevils when the time limit of the offer had expired. Mabie's letter to Stafford indicating that he was declining the $10,000 offer, pointed out that appellant had not divulged its policy limits and that there might be more coverage available; that in such case, appellant had "evaded your offer to settle for the limits and has waived their chance to settle for a low figure, if the limits are low, such as twenty thousand dollars ($20,000) or twenty-five thousand dollars ($25,000) per person." Mabie stated that he agreed with Nevils that he had been patient and waited long enough and should try to get what the case was worth; that he had filed suit the previous week.
Appellant contends that it could not adequately investigate the case to determine the extent of damages for which it would be liable until suit was filed and discovery was available to it. This would be a valid contention if appellant had sought authority from appellee to communicate directly with the doctors and hospitals and to obtain their records and had been refused such request. It does not appear, however, that it ever sought such authority or did anything during the five and a half month interim between the accident and the expiration of the settlement offer to diligently investigate the claim toward a possible settlement. The jury could properly weigh this evidence and conclude that had appellant properly investigated the case it would have known it was unquestionably liable and that the damages obviously exceeded the policy limits; that such failure by the insurer constituted bad faith toward its insured who as a result thereof was subjected to personal liability greatly in excess of the limits for which he was covered by the policy. Ultimately, after suit was filed and appellant belatedly completed its investigation of the case through discovery procedures, it did on June 12, 1970, (over 11 months from the date of the accident) offer to settle for the policy limits, but the offer was then declined.
Appellant also contends that Stafford's offer was necessarily contingent upon the government's claim being settled. But Stafford's offer stated, "This would include also the claim of the Government with whom we will settle directly." Appellant did not raise that question at the time. Had it agreed to settle for the policy limits, it could have done so subject to the government claim being settled and thus have avoided this additional liability.
In addition, appellant contends that since Nevils was a minor, his claim could not have been settled without approval of the court. This is correct, but a settlement of a minor's claim could never be accomplished if insurance companies took this attitude. *168 All such settlements must necessarily be subject to court approval.
In the recent opinion of the Supreme Court in Campbell v. Government Employees Insurance Company, Fla., 306 So.2d 525, that court reversed this court's setting aside of a judgment for excess liability, holding that this court was not at liberty to substitute its judgment for that of the trier of the facts since there was evidence to support the judgment. It stated:
"Bad faith in a factual situation of this kind is not a matter of law but is a question of fact for the jury."
It referred to Auto Mutual Indemnity Company v. Shaw, 134 Fla. 815, 184 So. 852, and stated:
"We ruled therein that such matters as reasonable diligence and ordinary care were material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact  not of law."
The evidence is sufficient to support the jury's verdict and were we of a different view from that of the jury, we would not be authorized to substitute our judgment for theirs.
Appellant also contends that the trial court erred in denying the defendant's motion to dismiss and motion for directed verdict based on the law of the State of Mississippi; that the contract of insurance between appellant and appellee was made in the State of Mississippi and matters bearing upon the interpretation and obligations of contracts are determined by the laws of the place where the contract is made; that under the law of Mississippi, there could be no recovery by appellee against appellant in this case. While this is an action growing out of a contract, it is not a contract action strictly speaking. It is a hybrid which has some of the aspects of a tort action and some aspects of an action ex contractu. In Thompson v. Commercial Union Insurance Company of New York, Fla.App. (1st), 267 So.2d 18, cert. den. 271 So.2d 461, this court said:
"... Although the courts have labeled a claim for `bad faith' in refusing to settle as a contract action, it possesses certain illegitimate characteristics. The `contract' is one engrafted by the courts upon a detailed written instrument and labeled with such terms as `negligent refusal to settle' and `bad faith'; thus to a great extent the action sounds in tort arising out of a contractual relationship."
Since an excess judgment action, though bearing certain aspects of a suit upon a contract is, strictly speaking, not one, we find that the law of Florida is the correct law to be applied in this situation.
Appellant next contends that the trial court erred in admitting expert testimony by two attorneys as to their opinion that the insurer did not meet the standard of care imposed upon an insurance company in such circumstances; that this was the ultimate issue in the case and that such testimony invaded the province of the jury. In a somewhat analogous case, Millar v. Tropical Gables Corporation, Fla.App. (3d), 99 So.2d 589, our sister court in a case involving the testimony of an architect and an engineer, who testified, over objection, as to whether certain construction and maintenance was "according to reasonably safe construction and engineering standards" stated:
"In the instant case, the appellees have conceded the qualifications of the two witnesses whose testimony was proffered by the appellant. Their testimony would be helpful in order to determine whether the premises were constructed and maintained in accordance with reasonably safe construction and engineering standards. These witnesses would be subject to cross-examination by the appellees and to rebuttal testimony by equally competent engineers and architects. There would be no duty on the jury's part to accept these two experts' testimony *169 as proof of the ultimate fact of negligence on the part of the appellees. If the jury found that the facts on which the appellant's hypothesis or theory is based were not proved, the answers of the experts would necessarily fall with the hypothesis... .
There is considerable authority for the lower court's ruling in excluding the testimony of the two experts as an invasion of the province of the jury, but we feel that the present trend of authority is to make no distinction between evidential and ultimate facts as subjects of expert opinion. See North v. State, Fla. 1952, 65 So.2d 77 at pages 87, 88; 20 Am.Jur., Evidence, § 782, p. 654. It is still the sole province of the jury to accept or reject the testimony of the expert witness, regardless of how respectable and qualified that witness may be, and the jury is in no wise bound by the expert's conclusions, any more than it is bound by the testimony of any other witness. This theory has been cited with approval and further explained in II Wigmore on Evidence, 3d Ed., § 673, p. 795."
We agree with the above quoted statement and find no reversible error in the experts' testimony in the case sub judice.
Appellant next contends that the trial court erred in denying its motion to add Nevils, the original claimant, and Nelson, the driver of the insured vehicle, as additional parties plaintiff or, in the alternative, to dismiss the cause for failure to join them as they were indispensable parties. We find no error in the trial court's ruling in this regard. Neither Nevils nor Nelson were indispensable parties to an adjudication of whether or not appellant was liable to its policy holder for the amount of a judgment entered against the policy holder in excess of the policy limits. See Alger v. Peters, Fla., 88 So.2d 903. In addition, the trial court pointed out in its order denying the motion to add the additional parties that "counsel for plaintiffs stipulated that the proceeds, if any, of the action would be applied toward the satisfaction of said judgment."
Finally, appellant contends that the trial court erred in awarding an attorney's fee to appellee's attorney. We agree. The attorney's fee was awarded under the authority of § 627.428, Florida Statutes, which appears in Part II of the Insurance Code. § 627.401, Florida Statutes, provides in part as follows:
"627.401 Scope of Part II. No provision of Part II of this chapter shall apply as to:
(1) ...
(2) Policies or contracts not issued for delivery in this state nor delivered in this state... ."
The policy of insurance which was the basis for this lawsuit was issued to appellee, a resident of Mississippi, for delivery in Mississippi, as evidenced by the renewal certificate attached to the complaint. It is thus obvious that said § 627.428 is not applicable and an attorney's fee for appellee's attorney is not authorized.
Appellee cites and relies upon General Insurance Company of America v. Roth, Fla.App. (3d), 233 So.2d 662. We, however, agree with the opinion of the Fourth District Court of Appeal in Pan-American Life Insurance Company v. Fuentes, Fla. App. (4th), 258 So.2d 8, where that court stated as follows in rejecting the ruling made by the Third District Court of Appeal in General Insurance Company of America:
"The plaintiff has raised by an interlocutory appeal which has been consolidated with the defendant's full appeal the question of plaintiff's entitlement to an attorney's fee under Section 627.0127, F.S. 1969, F.S.A. The trial court by a postjudgment order answered the question in the negative, and we affirm this order. With certain exceptions not pertinent here Section 627.0127, F.S. 1969, F.S.A. does not apply to an insurance contract *170 which like the one here involved was neither issued for delivery in Florida nor delivered in this state. See Section 627.01001(2), F.S. 1969, F.S.A. The opinion of the Third District Court of Appeal in General Insurance Company of America v. Roth, Fla.App. 1970, 233 So.2d 662, is apparently at variance with our view. We respectfully decline to follow that opinion because it was predicated on a Florida Supreme Court opinion that preceded the adoption of Section 627.01001(2), F.S. 1969, F.S.A., and in our judgment does not give effect to the clearly expressed intention of the legislature as revealed by said statute."
It is fundamental that attorneys' fees may only be awarded when they are provided for in the contract (if the action is one on contract) or if authorized by statute, neither of which is the situation here.
As an additional contention regarding the claim for an attorney's fee, appellant states that appellee's counsel (he was also attorney for the plaintiff in the original action in which the excess judgment was entered against his client in the present case) is in violation of the Canons of Professional Ethics in that it is unprofessional for him to represent conflicting interests except by express consent of all concerned given after full disclosure of the facts. Appellant points to The Florida Bar v. Moore, 194 So.2d 264, in which the Supreme Court said:
"... It is immaterial that in continuing his dual representation, the respondent may have acted with good intentions or that his motives may have been pure. It is settled that, except in exceptional circumstances which are not to be found in this record, an attorney may not represent conflicting interests in the same general transaction, no matter how well-meaning his motive or however slight such adverse interest may be. The rule in this respect is rigid, because it is designed not only to prevent the dishonest practitioner from fraudulent conduct but also to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent."
Disciplinary Rule 5-105 of Canon 5 of the Code of Professional Responsibility provides in pertinent part as follows:
"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).
(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).
(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
(D) ...".
In the case sub judice, it is the attorney's duty to press for satisfaction of the judgment entered in favor of his client, Nevils, and against his client, Grounds. The attorney has stated that he did make full disclosure of the facts to both clients and obtained the consent of both to the double representation. Appellant replies that the attorney could not have advised both clients of all of the conflicts of interest that might arise between them in the course of this litigation since the attorney *171 himself could not accurately anticipate and forecast them in advance. It does not appear that any conflicts have arisen between the attorney's two clients up to this point in the litigation. If any such conflicts did arise, the attorney would be confronted with then withdrawing from representation of one or the other.
Since we find that attorney's fee is not allowable to appellee's attorney on other grounds, we make no adjudication upon the ground charging violation of the Code of Professional Responsibility. The proper forum for that determination is The Florida Bar, subject to review by the Supreme Court. We recommend that the Florida Bar address itself to the clarification of the aforesaid rule in relation to the type of case that is here before us so that attorneys may be guided along the proper path in future litigation such as this.
The judgment for attorney's fee is reversed and the final judgment in all other respects is affirmed.
RAWLS, C.J., and MILLS, J., concur.