360 So.2d 464 (1978)
BOSTON OLD COLONY INSURANCE COMPANY, a Foreign Corp., Appellant,
v.
Raul GUTIERREZ, Appellee.
Nos. 77-508, 77-761.
District Court of Appeal of Florida, Third District.
July 11, 1978.
*465 Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellant.
Sams, Anderson & Ward and Murray Sams, Jr., Miami, for appellee.
Before HAVERFIELD, C.J., and PEARSON, J. and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
The first of these consolidated appeals is from a final judgment upon a jury verdict in an action against an insurance company by an injured plaintiff (who is not a policyholder of the insurer) for bad faith failure to settle with the plaintiff. The second is an appeal from a second judgment awarding the plaintiff attorney's fees in the same action. The principal issue presented on the first appeal is whether the evidence supports the judgment. On the second appeal, the issue is whether attorney's fees may be separately assessed by the court as an adjunct to the cause of action.
The evidence before the jury, viewed in the light most favorable to the verdict, is that on January 1, 1973, at approximately 6:00 p.m., Boston Old Colony's insured, Brown, and appellee Gutierrez were involved in a head-on collision on West Flagler Street in Miami, Florida. At the time of the accident, Brown had an automobile liability policy with Boston Old Colony which provided liability coverage of $10,000 per person. An unusual circumstance of the accident was that both Brown and Gutierrez claimed to have been proceeding east on Flagler Street and each claimed that the other car was headed west on Flagler Street, came over the center line and hit him head-on. There were three witnesses to the accident. All three of these witnesses gave testimony that Gutierrez was headed east on Flagler Street when Brown, who was traveling west, crossed the center line *466 and struck Gutierrez's automobile head-on in his lane. Brown told George Heider, a senior adjuster of Boston Old Colony, that he was proceeding east on Flagler Street when the other automobile, heading west on Flagler Street, came over the center line and hit him head-on. Three witnesses provided by Brown to his insurance company gave statements supporting Brown's version of the accident. They lived in a trailer park two blocks west from where the accident occurred and said that Brown had been with them minutes before the accident when he drove out of the trailer park and headed east on Flagler Street. The investigating officer, after viewing the scene and interviewing the eyewitnesses, charged Brown with the accident.
Heider knew there was a question of liability despite Brown's version of the accident, and he so noted in his file. He knew that Gutierrez's injuries were serious and he noted in his file that Gutierrez was in South Miami Hospital in the intensive care unit. His condition was listed as critical. He also learned that Gutierrez had a fractured arm, thirteen fractured ribs, a fractured leg and was paralyzed from the waist down. Brown could not talk due to a tracheotomy. Although Boston Old Colony denied any liability to Gutierrez's attorney on January 9th and again on February 12th, Heider had, in fact, set up a reserve of $9,500 on Brown's policy of $10,000. Heider had full authority to settle where there was a possibility of a verdict and a judgment in excess of the $10,000 policy limits.
On January 18th, at Heider's request, Boston Old Colony engaged a Mr. David Plummer, a trained professional accident reconstruction expert, to investigate the physical evidence and to render an opinion as to which car had been traveling east. After examining the accident site and the wrecked vehicles, a report was sent by Plummer to Heider on March 14th in which he discussed the physical evidence and gave his opinion that Brown was eastbound and Gutierrez was westbound on Flagler Street. He further concluded that Gutierrez was completely on the wrong side of the pavement at the point of impact.
Brown reported to Heider that he had employed a personal attorney, Malcolm Kneale, and was planning to make, and later did make, a claim for his own injuries. Heider determined that because of the seriousness of Gutierrez's injuries and the conflict in liability testimony, he would offer to pay the $10,000 policy limits to settle the Gutierrez claim. Before making the offer to Gutierrez, Heider again talked with Brown. Although there was nothing in the policy that gave Brown the right to approve or disapprove the settlement, Heider consulted with him because Heider knew that Brown was represented by personal counsel and was going to make claim for his own injuries. During the conversation, Brown adamantly opposed offering settlement to Gutierrez even though Heider had warned him of a possible excess verdict. Heider asked Brown to provide Old Colony with a hold harmless letter. The hold harmless letter was prepared by Brown's attorney, Kneale, and was signed by Brown.
There was a conflict in the testimony between Kneale and Heider as to the circumstances leading up to the hold harmless letter. Accepting Kneale's testimony at the trial, it is that some time before the execution of the hold harmless letter, Heider had told him that Gutierrez had no liability insurance and that Kneale and Heider had discussed an uninsured motorist claim by Brown against Boston Old Colony. According to Kneale, Heider's position had been that Boston Old Colony would not "pay both ways;" that it would pay either the uninsured motorist claim or Gutierrez's claim, but it would not pay both. Kneale also testified that Heider told him that Brown's uninsured motorist claim would not receive favorable treatment unless the hold harmless letter was prepared and that he was relying on Heider to make immediate settlement under the uninsured motorist claim.
In actuality, Gutierrez had a liability insurance policy with Government Employees Insurance Company. On March 14th, Gutierrez's attorney wrote Heider offering to *467 settle the claim against Brown and Boston Old Colony for the policy limits. On March 22nd, Heider wrote Gutierrez's attorney denying liability. Heider testified that he would, at that time, have paid the policy limits of $10,000 had he not obtained the hold harmless letter. On March 23rd, Heider sent Brown's attorney a copy of Gutierrez's attorney's letter of March 14th offering to settle for the policy limits.
Thereafter, suit was filed by Gutierrez against Brown and Boston Old Colony. Boston Old Colony engaged an attorney, George Lanza, to defend Brown and Boston Old Colony. Attorney Lanza reported that the case was bad and recommended settlement for the policy limits. Although Lanza was not asked for his opinion on liability, he testified that if asked, he would have stated that without considering the damage factor, Gutierrez had a fifty-fifty possibility of recovery. On June 13th, Brown filed a claim against Boston Old Colony under the uninsured motorist provision of his policy. On July 11th, Heider wrote Brown's attorney that Gutierrez did, in fact, have insurance.
Kneale's law firm filed a counterclaim for Brown's damages in the collision. On November 13th, Gutierrez's attorney wrote Boston Old Colony a letter accusing it of bad faith and withdrawing the offer to settle for the policy limits. On December 27th, Brown settled his claim against Gutierrez's insurer for $5,000. Boston Old Colony, on January 2nd, offered to settle with Gutierrez for its policy limits. The cause between Gutierrez and Brown proceeded on the merits and the jury returned a verdict for Gutierrez in the amount of $1,418,350.16.
The present cause against Boston Old Colony was brought by Gutierrez charging bad faith in Boston Old Colony's refusal to settle his claim. Upon the law enunciated by the Supreme Court of Florida in Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938), and applied more recently in Thompson v. Commercial Union Insurance Company of New York, 250 So.2d 259 (Fla. 1971), Gutierrez was entitled to bring the action directly against the tortfeasor liability insurer for recovery of the judgment in excess of the policy limits, based upon a claim of fraud or bad faith of the insurer in the conduct or handling of the suit.
Gutierrez's claim was fully tried before a jury. Extensive testimony was received and, except for the testimony of Brown, who was nowhere to be found, the facts set out were fully explored. The jury returned its verdict for Gutierrez in the amount of $1,418,350.16, with interest and costs. This appeal is from that judgment.
The appellant, Boston Old Colony, presents three points directed to the judgment. The first urges that Boston Old Colony should have been granted a directed verdict upon its motions because: (1) The insured, Brown, maintained at all times that he was not at fault; a position for which he had some evidence. (2) Brown's independent counsel prosecuted and recovered on a counterclaim against Gutierrez and expressly requested that the cause not be settled. (3) After the settlement of Brown's counterclaim against Gutierrez, Boston Old Colony offered to settle for its policy limits. Appellant's second point urges that the courts of Florida should recede from the holding in Thompson v. Commercial Union Insurance Company of New York, cited above, as the basis for Gutierrez's claim under Brown's insurance policy. The third point claims error upon the court's refusal to instruct upon the doctrine of avoidable consequences as requested by a tendered instruction based upon Boston Old Colony's offer to settle for its policy limits prior to trial. We do not discuss the second point because we find Thompson v. Commercial Union Insurance Company of New York to be governing.
We hold that the record contains sufficient evidence to support the verdict even though Boston Old Colony had a request not to settle Gutierrez's claim from its own policyholder. We are impressed with the testimony that the policy between Boston Old Colony and Brown left the insurance company free to exercise its own judgment as to settlement. Further, there *468 is evidence which, if believed by the jury, could support Gutierrez's position that Brown's position and the hold harmless letter were procured without a full disclosure of facts known to Boston Old Colony. We realize that an insurer is ordinarily bound to act in accordance with the wishes and the best interests of its insured, see American Fidelity & Casualty Company v. Greyhound Corporation, 258 F.2d 709, 716 (5th Cir.1958), and that it has a right to rely upon his expressed wishes concerning a settlement of his claim. In this case, where there was evidence of less than open-handed dealings with the insured, we think that the submission of the cause to the jury cannot be said to be faulty as a matter of law.
The third aspect of Boston Old Colony's argument for error upon the denial of its motions for a directed verdict presents the question: Is an action for bad faith in refusing to settle a claim maintainable when the company has offered to settle for its policy limits prior to trial? The jury in this case was fully informed of the offer to settle just prior to trial. The same jury found bad faith in the insurance company's dealing with its insured. The plaintiff-appellee, Gutierrez, claimed as a third party beneficiary under Brown's contract with the defendant, Boston Old Colony. The jury verdict must be interpreted as finding that the belated offer to settle, made only after bad faith had been charged and Gutierrez's offer to settle had been withdrawn, reasonably resulted in the excess verdict. We cannot now say that if bad faith had occurred, as the jury found, that this bad faith was, as a matter of law, wiped out by the belated offer to settle. Cf. the principles of law in American Fidelity & Casualty Company v. Greyhound Corporation, 258 F.2d 709, 715-716 (5th Cir.1958); and cf. Government Employees Insurance Company v. Grounds, 311 So.2d 164, 167 (Fla. 1st DCA 1975).
Appellant's remaining point on its appeal from the final judgment urges that the trial court erred in failing to give a requested instruction.[1] No attack is made by appellee upon the wording of the instruction. The question is whether it was applicable under the evidence in this case. We hold that it was not because the issue of whether the bad faith occurred prior to the withdrawal of Gutierrez's offer to settle for the policy limits was clearly drawn. See Garrison v. Hertz Corporation, 129 So.2d 452 (Fla. 3d DCA 1961).
We turn to the second of the consolidated appeals. This appeal is from a post-trial order allowing plaintiff Gutierrez an attorney's fee in his bad faith action. The appellee concedes that the subsequently-filed decision of the Supreme Court of Florida in Roberts v. Carter, 350 So.2d 78 (Fla. 1977), is governing and the award must be reversed because there was no assignment of the insured's claim.
Accordingly, the final judgment is affirmed and the order allowing attorney's fees to the plaintiff Gutierrez is reversed.
NOTES
[1] REQUESTED INSTRUCTION NUMBER FOUR
"A party cannot recover damages flowing from consequences which that party could reasonably have avoided. If the insured or his counsel, by a reasonable exertion or care, could have prevented damages resulting to the insured by reason of the defendant's wrongful acts, it was his duty to do so, and so far as he or his counsel could have thus prevented the damages, the plaintiff cannot recover."