PER CURIAM.
This consolidated appeal arises from litigation regarding a February 23, 1996 car accident. Nicholas Copertino lost control of his car and crossed a median, hitting an oncoming car. This tragedy resulted in the unfortunate deaths of five teenagers and severe injuries to another seven, including Copertino and a 14-year-old girl rendered a quadriplegic. Copertino’s liability for those resulting injuries was not in question.
Copertino was covered by his father’s Florida Farm Bureau General Insurance Company (“Farm Bureau”) policy with bodily injury limits of $100,000 per claim and $300,000 per accident. Consequently, with the five death claims and seven significant personal injury claims, the policy limits were plainly inadequate.
Farm Bureau settled for the limits with Lisa Boccia, the driver of the other car, and the Rashidian and Cordes estates, two of the death claims, by March 8, 1996. After exhausting the limits, Farm Bureau filed a declaratory judgment action in July 1996 against the insured, the Copertinos, *558 to determine whether it had any further duty to defend the Copertinos after having paid the policy limits. Appellants intervened and ultimately all filed third-party bad faith actions alleging that Farm Bureau entered into settlements without due regard for the interests of the insured.
Farm Bureau moved for summary judgment against all appellants, and the Fari-nases moved for cross-summary judgment. The trial court granted summary judgment to Farm Bureau as to all the appellants and denied the Farinases’ summary judgment. Now, all appellants seek review of the summary judgment granted to Farm Bureau, and the Farinases also seek review of the denial of their summary judgment.
We are confronted with three questions: 1) what was Farm Bureau’s good-faith duty to the insured, the Copertinos, in a multiple claimant situation, 2) did Farm Bureau meet that duty and 3) are there any remaining issues of fact for a jury to determine.
A brief background of insurance good-faith law is necessary to provide context for our analysis. Good-faith law in Florida evolved as liability insurance policies began to replace traditional indemnity policies.
Under liability policies, however, insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured’s exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. This placed insurers in a fiduciary relationship with their insureds similar to that which exists between an attorney and client. Consequently, courts began to recognize that insurers “owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement.” This duty became known as the “exercise of good faith” or the “avoidance of bad faith.” Under this new standard of culpability, if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured’s policy limits. This type of claim became known as a third-party bad faith action.
State Farm Mut. Ins. Co. v. Laforet, 658 So.2d 55, 57-58 (Fla.1995).
Even though the bad faith occurs between the insurer and its named insured, Florida law allows the injured third party insured to bring an action directly against the insurer. See Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971). The rationale behind this procedure is that the injured party, as the beneficiary of any successful bad faith claim, is the real party in interest as a sort of judgment creditor. See id. at 264.
In 1982, the Florida legislature enacted section 624.155, which created a statutory bad faith claim and extended the claim to the first-party insureds. See § 624.155, Fla. Stat. (Supp.1982). A 1990 amendment noted the existence of common-law bad faith and added that a person may obtain a judgment under either the common law remedy or the statutory remedy, but not both. See § 624.155, Fla. Stat. (Supp. 1990). The third district has determined that this statutory obligation did not change the common law obligation of good faith or the measure of damages. See Hollar v. Int’l Bankers Ins. Co., 572 So.2d 937, 939 (Fla. 3d DCA 1990). All the appellants in the present case, except the Farinases, grounded their claims on both the common law and statutory standards.
*559 The Florida Supreme Court announced the case law standard for insurer good faith in Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla.1980). The general standard of care that the insurer must exercise when handling claims against the insured is “the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.” Id. at 785 (citation omitted). Because the insured has relinquished control of all decisions regarding claims to the insurer, the insurer’s standard of care requires the insurer to act “in good faith and with due regard for the interests of the insured.” Id. (citation omitted). The extent of this good faith duty is explicitly defined in detail by the court:
This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.
Id. (citations omitted). The determination of whether an insurer has satisfied this standard is one for the jury. Id. (citation omitted).
This standard of care is further reflected in the applicable Florida Statute, which states that an insured has a cause of action for bad faith, when the insurer did not attempt “in good faith to settle claims when, under all circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regard for her or his interests.” § 624.155(b)(1), Fla. Stat. (2002).
Both prior and subsequent to the Florida Supreme Court’s decision in Boston Old Colony, courts have recognized attendant duties of good faith under Florida law. The United States Court of Appeals for the Fifth Circuit, when interpreting Florida bad faith law in a diversity action, concluded that the jury is to decide whether an insurer has given inappropriate primary regard to his own interests over those of the insured in making a settlement determination. Liberty Mut. Ins. Co. v. Davis, 412 F.2d 475, 480 (5th Cir.1969). Additionally, when there are multiple claimants ánd minimal policy limits, “it follows that, insofar as the insureds’ interest governs, the fund should not be exhausted without an attempt to settle as many claims as possible.” Id. at 481. More recently, the Florida Supreme Court augmented its decision in Boston Old Colony, by specifically addressing a multiple claimant situation involving a “deems expedient” clause, much like the present case. Shuster v. S. Broward Hosp. Dist. Physicians’ Prof'l Liab. Ins. Trust, 591 So.2d 174 (Fla.1992).
For example, when there are multiple parties to a suit, we do not believe a “deems expedient” clause will protect an insurer who, in bad faith, indiscriminately settles with one or more of the parties for the full policy limits, thus exposing the insured to an excess judgment from the remaining parties. Clearly, the intent of the parties would not have been to • allow the insurer to escape its primary duty to defend and indemnify the insured merely by paying out the full sum of the policy limits in bad faith.
Id. at 177 (citations omitted). Although Shuster approves of an insurance company settling claims within policy limits, there is nothing in Shuster that states the insurer *560 is not subject to a good faith duty to the insured. Shuster states that “an insured’s good faith discretion is broader when deciding to settle a claim within the policy limits than when refusing to settle or defend a claim.” Id. at 176 (citing Gardner v. Aetna Cas. & Sur. Co., 841 F.2d 82 (4th Cir.1988)). Stating that discretion is broader when an insurer settles a claim necessarily implies that what discretion exists, although broad, is not unbridled and is limited by some duty.
On the opposing side of the coin to the Florida Supreme Court’s evolving articulation of insurer good faith standards, is the Second District Court of Appeal decision in Harmon v. State Farm Mutual Automobile Insurance Co., 232 So.2d 206 (Fla. 2d DCA 1970). The case raised an issue of first impression:
Whether an insurance company may settle with two insureds in the full amount of the policy limits, thereby exhausting the limits of the policy to the exclusion of another insured under the uninsured motorist provisions of said policy.
Id. at 207. The court reviewed case precedent from other states and concluded that:
It is generally held that where multiple claims arise out of one accident, the liability insurer has the right to enter reasonable settlements with some of those claimants, regardless of whether the settlements deplete or even exhaust the policy limits to the extent that one or more claimants are left without recourse against the insurance company.
Id. at 207-208 (citations omitted). The trial court in the present case found this argument to be persuasive and relied upon it in determining that Farm Bureau acted within its rights when settling with three of the possible claimants.
On their faces, Boston Old Colony and related cases seem irreconcilably opposed to Harmon. Boston Old Colony provides that an insurer must conduct a full investigation of all competing claims arising out of an accident before endeavoring to settle any one individual claim, while keeping the insured informed at all junctures of the process. Harmon provides that an insurer may pick and choose which claims to settle based on any strategy it deems expedient, as long as those choices are reasonable. The trial court in the present case believes that it can decide which of these standards to apply. However, this is not the case, because the two cases are capable of harmonization.
Boston Old Colony and Harmon provide a general rule and a more specific application of that rule. The rule in Boston Old Colony sets a standard applicable in all automobile insurance bad faith cases, regardless of the factual circumstances and legal nuances of the cases. The Harmon rule focuses on the standard in scenarios with multiple competing claims. Therefore, the Boston Old Colony standard applies to all Florida cases alleging insurer bad faith, and Harmon applies to the subset of those cases involving multiple competing claims. Under this rationale, the present case is subject to both standards.
Farm Bureau was required by Boston Old Colony to fully investigate all the claims at . hand to determine how to best limit the insured’s liability. Additionally, based on Davis, Farm Bureau' should have sought to settle as many claims as possible within the policy limits. Finally, based on Shuster, Farm Bureau had the duty to avoid indiscriminately settling selected claims and leaving the insured at risk of excess judgments that could have been minimized by wiser settlement practice. Whether Farm Bureau satisfied each of these requirements, are questions for a jury to decide.
*561 Additionally, Farm Burean, by virtue of having a policy with the insured, had primary control of claims settlement placed in its hands by the insured. This fact gives Farm Bureau a certain degree of discretion in deciding how to approach decisions of settlement and defense with regard to the multiple claims in the present case. Based on Harmon, Farm Bureau could have entered into reasonable settlements with some claimants to the exclusion of others based on an exercise of its discretion. However, Farm Bureau, and the trial court, are not free to overlook the fact that Harmon requires these settlements to be “reasonable,” as part of the insurer’s fiduciary duty to the insured. However, the Second District Court of Appeal did not define “reasonable” in Harmon. Therefore, reasonableness must be determined based on some external source of authority, and in the present case, the general rules of Boston Old Colony and Florida Statutes section 624.155(b)(1) provide that very guidance.
Harmon may apply to the case at hand, but Farm Bureau’s decisions under its authority are subject to Boston Old Colony’s definition of reasonable standard of care and associated requirements. After full investigation and communication with the insured, Farm Bureau could have elected to follow a strategy of settlement with selected claimants, if that policy were reasonable. The reasonableness of that policy is also a question for the jury, one subject to the constraints of Boston Old Colony and related cases and statutes.
Because the necessary determinations of reasonableness were dispensed with by the trial court due to its reliance on Harmon, factual issues remain to be resolved by a jury.
We now answer the three questions posed for resolution by this opinion. First, Farm Bureau’s good faith duty to the insured requires it to fully investigate all claims arising from a multiple claim accident, keep the insured informed of the claim resolution process, and minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement. This does not mean that Farm Bureau has no discretion in how it elects to settle claims, and may even choose to .settle certain claims to the exclusion of others, provided this decision is reasonable and in keeping with its good faith duty. Second, whether Farm Bureau has met its good faith duty and undertaken a reasonable claims settlement strategy are questions for a jury to decide. Consequently, in answer to the third question, there are many factual issues for the jury to resolve, including whether Farm Bureau’s quick settlement with three of the possible claimants was reásonable, whether Farm Bureau’s rejection of global and other settlement options contemplated the best interests of the insured, whether Farm Bureau adequately investigated the facts of all of the claims, and whether Farm Bureau properly rejected advice of legal counsel and suggested settlement strategies proposed by Farm Bureau employees.
As a result, we reverse the summary judgment in favor of Farm Bureau, affirm the denial of the Farinases’ motion for summary judgment, and remand for jury trial. We affirm all other aspects of the appeal without comment.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR JURY TRIAL.
POLEN, C.J., GUNTHER and SHAHOOD, JJ., concur.