**GENERAL SECURITY NATIONAL INSURANCE COMPANY, as successor in interest to General Security Insurance Company, Plaintiff,**

v.

**Michele F. MARSH, Defendants.**

**No. 5:03–CV–77–0C–10GRJ.**

United States District Court,
M.D. Florida,
Ocala Division.

Feb. 10, 2004.

Ronald L. Kammer, Esq., Hinshaw & Culbertson, Miami.

Mitchell N. Silver, Esq., Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando.

Kelvin Lloyd Averbuch, Esq., Law Office of Kelvin L. Averbuch, Lake Mary.

## ORDER

HODGES, District Judge.

This declaratory judgment action is before the Court for consideration of the

Plaintiff's "Motion for Summary Judgment" (Doc. 36) and the Defendant's "Cross–Motion for Summary Judgment" (Doc. 39).[1] These motions are ripe for review and the Court concludes that the Plaintiff's motion is due to be granted.

## Background[2]

On April 21, 1998 a truck driven by Walter C. Taylor and owned by B & W Transport Incorporated collided with a vehicle driven by Michele Marsh and another vehicle driven by Christine Schaeffer. As a result of the accident Marsh suffered bodily injuries and Schaeffer died. Taylor and B & W were insured under a policy with the Plaintiff for a combined single accident liability limit in the amount of $300,000.

On May 12, 1998 Schaeffer's estate demanded the full $300,000 policy limit. On May 21, 1998 Marsh made the same demand. The Plaintiff, through its claims adjuster Claims Control Incorporated, requested and received information from Schaeffer's estate and Marsh's counsel as to each claimants age, marital status, survivors, employment, and health at the time of the accident.[3] The Plaintiff also requested and received information from Marsh's counsel with respect to Marsh's injuries.[4]

On June 11, 1998 the Plaintiff advised Schaeffer's estate and Marsh that its policy limit was available to both of the claimants on a "global basis." On June 11, 1998 Schaeffer's estate filed a lawsuit in state court against Taylor and B & W; and, on August 26, 1998 Marsh filed her state action. On October 29, 1998 the Plaintiff and the claimants attended an unsuccessful mediation scheduled by the Plaintiff.[5] Prior to the mediation the Plaintiff never offered the policy limit to any one claimant[6] and the claimants failed to agree on how to divide the tendered policy limit between themselves.[7]

"After all efforts to globally settle the claims had failed" the Plaintiff tendered its policy limit of $300,000 to Schaeffer's estate.[8] Schaeffer's estate signed a release of all claims on December 23, 1998.

The Plaintiff defended its insured in Marsh's state action. On February 10, 2000 Marsh obtained a jury verdict in its favor against Taylor and B & W for the total damages of Michele Marsh in the amount of $485,000.00 (Doc. 24). On September 6, 2000 the state court entered a "Second Amended Final Judgment" (Doc. 24) in favor of Marsh and against "B & W Transport, Inc., and Estate of Walter C. Taylor, deceased, the sum of $485,000.00, with costs in the sum of $7,300.00, and fees

1. The Court notes that the Defendant's "cross-motion" is limited to the issues regarding the Plaintiff's claim for declaratory relief (see Docs. 18, 34, 47, 54).

2. As a preliminary matter the Court notes that pursuant to Federal Rule of Civil Procedure 41(a)(1)(i) the Plaintiff filed a notice of voluntary dismissal as to Shelby Marsh (see Doc. 9) and that such claims are therefore dismissed.

3. See Doc. 36, Exhibit C, Deposition of Morgan, counsel for Marsh's state court action; Exhibit E, Deposition of Kelleher, counsel for Schaeffer's estate.

4. See Doc. 36, Exhibit C, Deposition of Morgan.

5. See Doc. 36, Exhibit F, Affidavit of Grunor, counsel retained to represent the insured; and, Exhibit G, Affidavit of Raphael, claims supervisor for Claims Control Incorporated.

6. See Doc. 36, Exhibits F & G.

7. The record reveals that prior to mediation Schaefer's estate consistently demanded the full policy limit. See Doc. 36, Exhibit E, Deposition of Kelleher, counsel for Schaeffer's estate.

8. See Doc. 36, Exhibits F & G.

**1324**

in the amount of $83,710.00, ... that shall bear interest," and in favor of Marsh and against "General Security Insurance Company, the same costs of $7,300.00, that shall bear interest." The Plaintiff satisfied the judgment for costs, with interest (Doc. 24).

Marsh has made a demand upon the Plaintiff to pay the remainder of the judgment for damages and attorney fees. The Plaintiff denied Marsh's demand and filed this action for declaratory relief, "requesting this court to find and declare that: (1) General Security has no obligation to indemnify B & W Transport, Inc. and Walter C. Taylor by virtue of exhausting its policy by payment of the policy limit to settle the wrongful death claim of Schaeffer and (2) that it has no duty to pay the attorney's fees award under the supplemental payment provision of the policy." (See Docs. 1 & 36).

The Defendant has filed a counterclaim (Doc. 5) asserting claims for statutory and common law bad faith, and attorney fees.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." [9] As the Supreme Court held in

*Celotex Corp. v. Catrett,* the moving party bears the initial burden of establishing the nonexistence of a triable fact issue.[10] If the movant is successful on this score, the burden of production shifts to the nonmoving party who must then come forward with "sufficient evidence of every element that he or she must prove." [11] The nonmoving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[12]

**Discussion**

### 1.  Contract Interpretation

The Florida Supreme Court has stated that "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." [13] The Court has also stated that if the policy language is ambiguous—that is, susceptible to more than one interpretation—then it should be construed against the drafter and in favor of the insured; and, that ambiguous exclusionary clauses are "construed even more strictly against the insurer than coverage clauses." [14] However, the Court has also recognized that courts cannot place limitations upon the plain language of a policy exclusion simply because the court thinks that the exclusionary clause should have been written a particular way.[15] Florida law also requires the Court to consider the policy as a whole, and to give meaning to all of its terms.

The insurance agreement (Doc. 1) at issue contains the following provisions:

**9.**  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

**10.**  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**11.**  *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987).

**12.**  *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

**13.**  *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla.2000).

**14.**  *Id.*

**15.**  *Deni Associates v. State Farm Ins.,* 711 So.2d 1135, 1139 (Fla.1998).

## COVERAGE

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'

We have the right and duty to defend any 'insured' against a 'suit' asking for such damages ... However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may investigate and settle any claim or 'suit' as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

## COVERAGE EXTENSIONS

In addition to the Limit of Insurance, we will pay for the 'insured;' ... All costs taxed against the 'insured' in any 'suit' we defend.... All interest on the full amount of any judgment that accrues after entry of judgment in any 'suit' we defend, but our duty to pay interest ends when we have paid ... the part of the judgment that is within our Limit of Insurance.

## LIMIT OF INSURANCE

Regardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident,' the most we will pay for the total of all damages ... combined, resulting from any one 'accident' is the Limit of

Insurance for Liability Coverage shown in the Declarations.

■■ A plain reading of the contract reveals that once the Plaintiff settled with Schaefer's estate for the policy limit of $300,000, it satisfied its duty to indemnify the insured and owed its insured no obligation to pay any further damages or to settle any additional claims. A plain reading of the contract also reveals that the Plaintiff only owned its insured a duty to pay the costs—as distinguished from attorney fees—taxed against the insured. Thus, the only remaining issue for this Court to decide is whether the Plaintiff acted in good faith—as required by Florida law—with respect to its insured when it settled Schaeffer's wrongful death claim to the exclusion of Marsh's claim.

### 2. *Good Faith Settlement*

■ Florida law provides that where multiple claims arise out of one accident the liability insurer may exercise its discretion in how it elects to settle claims, "and may even choose to settle certain claims to the exclusion of others, provided [that] this decision is reasonable and in keeping with its good faith duty."[16] In order to satisfy these requirements the insurer must: (1) fully investigate all claims arising from a multiple claim accident; (2) seek to settle as many claims as possible within the policy limit; (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement; and (4) keep the insured informed of the claim resolution process.[17] The Plaintiff has met these requirements.

---

**16.** *Farinas v. Florida Farm Bureau General Insurance Company*, 850 So.2d 555, 560–561 (Fla. 4th DCA 2003); *Harmon v. State Farm Mutual Automobile Insurance Company*, 232 So.2d 206, 207–208 (Fla. 2d DCA 1970).

**17.** *Farinas*, 850 So.2d at 560–561 (citing § 624.155, Fla. Stat., *Boston Old Colony Insurance Company v. Gutierrez*, 386 So.2d 783, 785–786 (Fla.1980), and *Harmon*, 232 So.2d at 207–208.).

There is no dispute in the record that in order to assess each claim the Plaintiff requested and received specific information from each claimant.[18] The Defendant's contention that the Plaintiff did not conduct a full investigation is baseless.

It is undisputed that the Plaintiff tendered its policy limits to both claimants on a "global basis." It is further undisputed that the Plaintiff allowed the claimants several months to negotiate an agreement as to how to divide the policy limit amongst themselves; arranged and attended a mediation conference in a further effort to effectuate a settlement of both claims within the policy limits; and, offered the full policy limit to Schaefer's estate only after settlement negotiations had failed. There is also no dispute that the Plaintiff settled with Schaeffer's estate in order to protect its insured from an excess judgment in the wrongful death action.[19]

The record is clear that after a full investigation and an effort to settle both claims the Plaintiff determined that the wrongful death claim posed the greater risk for an excess judgment against its insured. In light of this risk the Plaintiff settled with Schaeffer's estate in order to minimize the magnitude of possible excess judgments against its insured. The Defendant's contention that the Plaintiff's determination was unreasonable because a jury rendered a verdict for $485,000 in her favor, whereas the wrongful death claim was settled for $300,000, is without merit.[20]

Lastly, there is no dispute that the Plaintiff kept its insured informed as to the claims resolution process.

Accordingly, upon a review of the record the Court concludes that the Plaintiff acted reasonably and in good faith when it settled with Schaeffer's estate to the exclusion of Marsh. The Plaintiff's motion for summary judgment is due to be granted in all respects.

## Counterclaims

The Court concludes, as a matter of law, that because the Plaintiff lawfully extinguished its duties under the insurance contract it cannot be held liable for the judgment entered against its insured or for any of Marsh's bad faith or attorney fee counterclaims alleged in this action (Doc. 5). Accordingly, all of the Plaintiff's counterclaims are due to be dismissed.

## Conclusion

Upon due consideration and for the foregoing reasons, it is ordered that:

(1) the Plaintiff's "Motion for Summary Judgment" (Doc. 36) is GRANTED in all respects;

(2) the Defendant's "Cross–Motion for Summary Judgment" (Doc. 39) is DENIED in all respects;

(3) the Defendant's "Counterclaim" (Doc. 5) is DISMISSED in all respects;

(4) the Clerk is directed to enter judgment in favor of the Plaintiff and against the Defendant with fees and costs to be assessed according to law; and,

---

**18.** See Doc. 36, Exhibit C, Deposition of Morgan, counsel for Marsh's state court action; Exhibit E, Deposition of Kelleher, counsel for Schaeffer's estate. See also Doc. 24, Partial Stipulated Facts.

**19.** See Doc. 24, Partial Stipulated Facts.

**20.** The Plaintiff's expert opined that the probable range of damages for Schaefer wrongful death claim would be between $1,850,000–

$3,500,000, and that the "Schaefer wrongful death claim had a greater reasonable value at the time it settled than the reasonable value of the personal injury claim of Michele F. Marsh and derivative claim of her husband, Shelby Marsh." See Doc. 27, Exhibit A, Plaintiff's Expert Report. The Court also notes that Marsh's counsel in the state court proceedings concedes that at the time—that is, in 1998—he believed that the Schaeffer case had the greater value. See Doc. 36, Exhibit C.

(5) the Clerk is further directed to terminate the Plaintiff's motion to dismiss (Doc. 8) and the Defendant's motion for judgment on the pleadings (Doc. 10) as moot and any other pending motions and close the file.

IT IS SO ORDERED.