[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14851
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:09-cv-00231-GAP-KRS

U.S. SPECIALTY INSURANCE COMPANY,

Plaintiff-Appellant,

versus

WILLIAM G. BURD,
TEW CARDENAS, LLP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 26, 2012)

Before TJOFLAT, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

U.S. Specialty Insurance Co. sued William G. Burd, a former partner of the

Miami-based law firm Tew Cardenas, LLP, and Tew Cardenas for legal malpractice.

After five days of testimony, the jury found that Mr. Burd and Tew Cardenas had not committed malpractice.

At trial, the district court allowed a senior insurance executive (and agent of Specialty) to testify that no one could complain about Mr. Burd's legal performance. In addition, the district court refused to include some language when it instructed the jury on legal causation—language that Specialty desired. Specialty now seeks a new trial based on the district court's rulings. After a review of the record and the parties' arguments, we affirm.

I

On May 7, 2005, 15-year-old Josh Payne volunteered at the Valiant Air Command Warbird Museum in Titusville, Florida. Josh was under the tutelage of Mike McDonough, a 76-year-old volunteer at the Museum. Mr. McDonough and Josh scavenged a vintage airplane for parts. Valiant Air Command, the nonprofit organization which runs the Museum, used these parts to renovate other airplanes.

For some unknown reason, Mr. McDonough asked Josh to pull a pin from the vintage airplane's landing gear. Unfortunately, that pin kept the landing gear, which no longer had a hydraulic system, from collapsing. Valiant, moreover, had not supported the airplane by any other means. Thus, when Josh removed the pin, the airplane collapsed. Josh suffocated for ten minutes, which left him brain dead until doctors

2

revived him. Mr. McDonough died instantly: the airplane decapitated him.

This tragedy led to a legal and insurance fiasco for Specialty. Valiant had a liability insurance policy issued by Specialty. Although the policy provided coverage of $1 million, Valiant had two potential claims on its hands, for which $1 million did not suffice. To make matters worse, Valiant was a nonprofit organization which had few assets and depended largely on donations. Other than the insurance policy, Valiant had no means with which to pay for the tragic incident.

Valiant notified Specialty of the incident, and Specialty, in turn, assigned the investigation to Charles Taylor Consulting, or CTC. With permission from Specialty, CTC hired Tew Cardenas and one of its partners, Mr. Burd, to represent Valiant.

In Florida, insurance companies owe their policy holders a duty of good faith. This duty requires that the insurer attempt to lower the risk of a lawsuit that would expose the insured to damages exceeding the insurance policy's coverage. Where, as in Valiant's case, two persons are injured and each injury (at least at first sight) exceeds the insurance policy's coverage, things get dicey. *See Farinas v. Fla. Farm Bureau Gen. Ins.*, 850 So. 2d 555, 561 (Fla. Dist. Ct. App. 2003) ("Farm Bureau's good faith duty to the insured requires it to fully investigate all claims arising from a multiple claim accident, keep the insured informed of the claim resolution process, and minimize the magnitude of possible excess judgments against the insured by reasoned claim

settlement. This does not mean that Farm Bureau has no discretion in how it elects to settle claims, and may even choose to settle certain claims to the exclusion of others, provided this decision is reasonable and in keeping with its good faith duty.").

Specialty did not offer to settle with Josh until March 2006—almost a year after the tragic event. Specialty, moreover, offered Josh $850,000, not the full $1 million.

Josh rejected the offer and claimed that Specialty had breached its good-faith duty. According to Josh, Specialty dragged out the settlement for too long and then made a low-ball offer. After rejecting the offer, Josh sued Valiant.

On Valiant's behalf, Specialty eventually settled with Josh for $9 million. Specialty then turned around and sued Mr. Burd and Tew Cardenas for legal malpractice.

According to Specialty, Mr. Burd gave it the wrong advice. Mr. Burd, Specialty asserted, had the duty to advice it to offer Josh the full $ 1 million policy limit. Instead, he allowed Specialty to wait 10 months to offer Josh only $850,000. This supposedly caused Specialty to act in bad faith and forced it to settle for $8 million beyond the policy's coverage limit.

At trial Mr. Burd and Tew Cardenas played a video in which Paul Leonard testified. Mr. Leonard is CTC's chief executive officer, and he had first-hand knowledge of Specialty's settlement attempts with Josh. The video included the following question and answer between Mr. Leonard and Tew Cardenas' attorney:

4

**Attorney**: Do you know of any facts or circumstances regarding Bill Burd's actions in connection with the Valiant case that would expose him to indemnification liability to USSIC?

**Mr. Leonard**: First of all, I'm not a lawyer, and I don't know to the extent that the answer requires some type of legal opinion based upon all the circumstances of this. But I personally from the—from the information I have and my knowledge of this case, I don't know of any legitimate basis for a complaint against Bill Burd.

R. Vol. 10:183, at 13–14.

Specialty notes that Mr. Leonard is not an attorney and characterizes this answer as masquerading as an expert opinion on legal malpractice. The district court therefore erred, Specialty argues, when it allowed this testimony.

Specialty also asserts that the district court erred when it refused to modify the jury instructions. At one point, the district court considered a change to the jury instruction on causation. But, in the end, the district court changed its mind and did not modify the jury instruction as Specialty requested. Specialty now maintains that the district court confused the jury when it refused to modify the jury instructions.

## II

We review a district court's decision to admit evidence at trial for a clear abuse of discretion. *See Burchfield v. CSX Transp.*, 636 F.3d 1330, 1333 (11th Cir. 2011). But, to prevail on appeal, the party challenging the admission of evidence must also

show that it adequately preserved the objection and that any "error affected a substantial right." *Proctor v. Fluor Enters.*, 494 F.3d 1337, 1349 (11th Cir. 2007) (internal quotation marks omitted).

Similarly, a district court "enjoys broad discretion to formulate jury instructions provided those instructions are correct statements of the law." *United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012) (per curiam). We will reverse a district court for its refusal to give a requested jury instruction only if the appellant shows prejudicial harm. *See Merchants Nat'l Bank of Mobile v. United States*, 878 F.2d 1382, 1388–89 (11th Cir. 1989).

## III

## A

In its first claim of error, Specialty argues that Mr. Leonard improperly offered an expert opinion on legal malpractice. The Federal Rules of Evidence allow expert witnesses to testify, so long as the expert "is qualified as an expert by knowledge, skill, experience, training or education." FED. R. EVID. 702. But Mr. Leonard is no lawyer and lacked knowledge, skill, experience, training, or education in legal malpractice. So the district court blundered, Specialty maintains, when it allowed Mr. Leonard to opine that Mr. Burd did not commit malpractice. Disagreeing with this argument, Mr. Burd contends that Mr. Leonard—who had first-hand knowledge of the settlement

negotiations—opined as a lay witness, which is allowed if the witness forms his opinion on his "perception," the opinion helps the jury understand the "witness's testimony" or helps determine "a fact in issue," and the opinion is "not based on scientific, technical, or other specialized knowledge." FED. R. EVID. 701.

We doubt that Mr. Leonard's testimony constituted an impermissible expert opinion. *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003) ("We . . . have determined that the testimony offered by Tampa Bay's employees and/or officers was of a type traditionally and properly considered lay witness testimony . . . . Tampa Bay's witnesses testified based upon their particularized knowledge garnered from years of experience within the field. Their testimony was helpful to the district judge and relevant to the issues presented in the case.") (footnote omitted). But we need not decide the matter definitively. Even if the snippet of Mr. Leonard's testimony was improper, it did not affect a substantial right.

As already mentioned, to obtain reversal, Specialty must show that the district court 's decision affected a substantial right, i.e., show that the error "probably had a substantial influence on the jury's verdict." *Proctor*, 494 F.3d at 1352 (quoting *United States v. Stephens*, 365 F.3d 967, 977 (11th Cir. 2004)). Specialty cannot meet its burden on this record.

To begin with, it is unlikely that the jury believed Mr. Leonard to be an expert

7

or to be opining as such. First, no one proffered Mr. Leonard as an expert, and the district court did not accept him as an expert. Second, Mr. Leonard prefaced his testimony by recognizing that he is not a lawyer and thus could not give a legal opinion. R. Vol. 10:183, at 13–14. Third, in its closing argument Specialty stressed Mr. Leonard's lack of legal-malpractice expertise. R. Vol. 15:240, at 38. Fourth, for their part, Mr. Burd and Tew Cardenas did not refer to Mr. Leonard as an expert in their closing argument. R. Vol. 15:240, at 91.

Mr. Leonard's testimony, moreover, was cumulative. Ward Copley *is* a lawyer, and he too worked on the settlement with Josh as a senior CTC claim adjuster. And, like Mr. Leonard, he testified that Mr. Burd did nothing wrong. R. Vol. 15:239, at 64. Significantly, Specialty never objected to Mr. Copley's testimony.

Specialty maintains that the jury would have considered Mr. Leonard's testimony an admission by Specialty that Mr. Burd committed no wrong. After all, Specialty argues, CTC was Specialty's agent, and CTC's actions bound Specialty. The testimony of a CTC employee that Mr. Burd did nothing wrong would appear to the jury little more than an admission by Specialty. The argument, however, misunderstands the difference between an admission, which can be in the form of a lay opinion, *see United States v. Dulcio*, 441 F.3d 1269, 1274 (11th Cir. 2006) (per curiam), and expert testimony. And it ignores the fact that Mr. Copley too is a CTC employee who testified

8

that Mr. Burd did nothing wrong.

Finally, the jury's decision is easily supportable even without Mr. Leonard's supposedly improper testimony. Mr. Burd testified (1) that CTC told him to sit on the sideline as CTC tried to settle the claims and (2) that he did not tell Specialty to make the $850,000 settlement offer. R. Vol. 15:239, at 165–66,190. Both Mr. Leonard and Mr. Copley affirmed Mr. Burd's testimony. R. Vol. 15:183, at 7, 11–12, 15–16, 22; R. Vol. 15:239 at 27–28, 52–57. We assume, given the verdict, that the jury accepted this version of events. *See United States v. Hill*, 643 F.3d 807, 842 (11th Cir. 2011) ("In light of . . . the overwhelming amount of other evidence presented at trial, we are not left with a grave doubt that the outcome was affected by any error in admitting the testimony."). Given Mr. Leonard's equivocal, moderated testimony, Mr. Copley's matching testimony, and the evidence in Mr. Burd's favor, the district court's evidentiary decision did not affect a substantial right. *See, e.g.*, *Maiz v. Virani*, 253 F.3d 641, 667–68 (11th Cir. 2001) (finding no reversible error in the admission of testimony where party had opportunity to attack testimony and other evidence supported verdict).

## B

Specialty's second argument is that the district court erred in failing to include language in the causation portion of the jury instructions. But this argument carries weight only if Specialty proves prejudicial harm. *See Merchants Nat'l Bank*, 878 F.2d

9

at 1388–89. This Specialty cannot do, for, as Mr. Burd highlights, the jury never reached the causation issue.

The verdict form first asked whether Mr. Burd was negligent. Only if the jury answered "yes" to that question did the verdict form ask the jury to consider whether Mr. Burd's actions caused Specialty's damage. Specialty wanted a modified instruction with regard to this causation question. But, because it found that Mr. Burd did not act negligently, the jury never got to causation. It is thus unclear how, exactly, Specialty could suffer any harm here. Indeed, in its reply brief, Specialty admits that "it is often difficult to actually prove the confusion caused by an erroneous instruction" but insists that it is somehow obvious here. We disagree.

## IV

The judgment in favor of Mr. Burd and Tew Cardenas is affirmed.

**AFFIRMED.**