386 So.2d 783 (1980)
BOSTON OLD COLONY INSURANCE COMPANY, Petitioner,
v.
Raul GUTIERREZ, Respondent.
No. 54769.
Supreme Court of Florida.
April 10, 1980.
Rehearing Denied September 4, 1980.
*784 James E. Tribble of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for petitioner.
Murray Sams, Jr. and Francis W. Sams of Sams, Gerstein & Ward, Miami, for respondent.
PER CURIAM.
We have for review the decision of the District Court of Appeal, Third District, in Boston Old Colony Ins. Co. v. Gutierrez, 360 So.2d 464 (Fla.3d DCA 1978). That court has certified the following question as passing upon a question of great public interest: "Does the law as enunciated in Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259 (Fla. 1971), authorize a bad faith action against an insurance company when that company has refused to settle a claim at the express direction of its own insured who obtains a settlement of his claim and the insurance company thereafter offers to settle for its policy limits before trial?" Although we hold that Thompson may, in some circumstances, authorize such a suit, we find the evidence in this case legally insufficient to show bad faith on the part of Boston Old Colony Insurance Company.
Brown and Gutierrez were involved in a head-on collision. Both men claimed that they had been travelling east and that the other's car, headed west, crossed the center line of the highway and caused the collision. The officer who investigated at the scene concluded that Brown was responsible. Gutierrez brought an action against Brown for his injuries which action was defended by Brown's liability insurance carrier, Boston Old Colony. Brown's liability policy covered him up to a limit of $10,000.
In view of Brown's version of the facts and some corroborating evidence, Boston Old Colony retained an accident reconstruction expert. The expert examined the accident site and the wrecked vehicles and concluded that Brown's account was correct, that Gutierrez was west-bound and on the wrong side of the road at the point of impact.
Despite this favorable expert opinion evidence, Boston Old Colony's adjustor knew there was a question of liability. He knew also that Gutierrez's injuries were extensive and that there was a possibility of an excess judgment. He warned Brown of these matters and suggested an offer to settle for the policy limits. Brown was opposed to a settlement. He had counterclaimed against Gutierrez for his own injuries and apparently did not want to make the admission of fault implied by an offer to settle. So Boston Old Colony asked for, and Brown executed, a "hold harmless" agreement, in which Brown assumed responsibility for any excess judgment.
Before the trial, with the claim and the counterclaim pending, Gutierrez offered to take the policy limits in settlement of his claim against Brown. Boston Old Colony responded by denying liability. Subsequently, Brown reached a settlement of his counterclaim against Gutierrez and his insurer. With the counterclaim no longer pending, Boston Old Colony offered Gutierrez the policy limits in settlement. By this time, however, Gutierrez preferred to proceed to trial. The trial resulted in a judgment for Gutierrez against Brown for $1,400,000. Gutierrez then brought the *785 present action against Boston Old Colony, alleging bad faith on the part of the insurance company because of its failure to settle the claim for policy limits when it had the opportunity. Gutierrez prevailed and obtained a judgment against Boston Old Colony for $1,400,000.
On appeal, Boston Old Colony argued that its motion for a directed verdict should have been granted since the evidence showed that Brown at all times contested liability and had evidence to support his position; that he requested that his insurer not settle the suit since he was pursuing his counterclaim against Gutierrez; and that after settlement of the counterclaim, Boston Old Colony offered the policy limits before trial. The district court affirmed, holding that there was sufficient evidence upon which a jury could base a verdict of bad faith failure to settle.
Boston Old Colony contends that Gutierrez, the injured tort plaintiff, should not be allowed to bring this action directly against it for its alleged bad faith in failing to settle his claim against Brown, its insured. We previously rejected a similar contention in Thompson v. Commercial Union Ins. Co. of New York. The fact that such an action may be brought does not mean, however, that Gutierrez is entitled to an excess judgment. He must first establish by legally sufficient evidence that the insurance company acted in bad faith.
This brings us to Boston Old Colony's second contention that there was no evidence sufficient to support the jury's finding of liability for bad faith in not settling the claim. An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. Liberty Mutual Ins. Co. v. Davis, 412 F.2d 475 (5th Cir.1969). This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir.1970). The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Government Employees Ins. Co. v. Grounds, 311 So.2d 164 (Fla. 1st DCA 1975), cert. discharged, 332 So.2d 13 (Fla. 1976); Government Employees Ins. Co. v. Campbell, 288 So.2d 513 (Fla. 1st DCA 1973), quashed, 306 So.2d 525 (Fla. 1974); Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. American Fidelity and Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir.1958); DeLaune v. Liberty Mutual Ins. Co., 314 So.2d 601 (Fla. 4th DCA 1975). The question of failure to act in good faith with due regard for the interests of the insured is for the jury. Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974).
The evidence presented in the present case demonstrates that Boston Old Colony fulfilled all these obligations. We hold that under the facts of this case, Thompson does not require the result reached by the district court of appeal. There is no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer. The facts in Thompson are materially different from the facts now before us. In the present case, Brown, the insured, at all times contested liability and had evidence *786 to support his position. Brown expressly requested Boston Old Colony not to settle the claim because he was pursuing a counterclaim against plaintiff Gutierrez. Brown executed a "hold harmless" agreement in which he assumed responsibility for any excess judgment. After settlement of Brown's counterclaim, prior to trial, Boston Old Colony offered to settle for policy limits. Unlike Thompson, where the insurer refused to settle at all times despite advice of its own counsel, here the insurer was ready to settle, expressed its willingness to settle, and only because of the explicit request of its own insured did not settle. Furthermore, in the present case, unlike Thompson, the plaintiff refused to settle when the insurer subsequently offered to settle prior to trial.
By way of caveat, we point out that the "hold harmless" agreement in this case was not a determining factor in our decision. An insurer cannot escape liability for breach of the duty of good faith by acting upon what it considers to be its interest alone. An insurer with control over defense and settlement must at all times act in good faith, and it may not insulate itself from a bad faith excess judgment by simply obtaining a hold harmless agreement from its insured.
Accordingly, we hold that Boston Old Colony's motion for a directed verdict should have been granted, and we quash the decision of the district court. This cause is remanded for further proceedings consistent herewith.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG and McDONALD, JJ., concur.
ALDERMAN, J., concurs specially with an opinion, with which McDONALD, J., concurs.
ADKINS and BOYD, JJ., dissent.
ALDERMAN, Justice, concurring specially.
I concur with the Court's decision that the evidence in this case is insufficient to support the jury's verdict.
I concur specially to express my dissatisfaction with the rule of law announced in Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259 (Fla. 1971). I believe an injured tort plaintiff should not be allowed to bring an action directly against a tortfeasor's insurer for bad faith failure to settle a claim because, in my opinion, the insurer's good faith duty to settle runs only to its insured. Merely because an injured party becomes a third party beneficiary under an insurance policy does not entitle that party to invoke all the provisions of the insurance contract or statutes which govern the rights and duties between insurer and insured. Wilder v. Wright, 278 So.2d 1 (Fla. 1973).
In the "Alice-in-Wonderland" world created by the Thompson rule, it is to the injured party's benefit if the insurer breaches its duty to its insured and to his detriment if there is no breach. This is so since, if the insurer settles, the plaintiff will receive no more than the policy limits, but if it does not, the plaintiff may end up with both the policy limits and an excess judgment.
Judge Carroll, in Canal Insurance Company of Greenville, South Carolina v. Sturgis, 114 So.2d 469 (Fla. 1st DCA 1959), aff'd, 122 So.2d 313 (Fla. 1960), clearly perceived the illogic of allowing an injured third party to maintain a direct action against the insurer for failure to settle when he said:
No one can today question the legal right of the insured to sue the insurer for negligence or bad faith in failing to settle a claim within the policy limits for, if he has had to pay a part of the judgment, he has indeed suffered damages because of such failure of the insurer; but, when the judgment creditor directly so sues the insurer for an amount above such limits, a vastly different situation exists in the eyes of the law. The judgment creditor has not suffered because of the insurer's failure, but has, if anything, gained thereby. The judgment creditor would be in an anomalous position, for typically he would be claiming damages for the *787 insurer's failure to settle the case for much less than the verdict he himself actually won.
114 So.2d at 471. Far from encouraging settlement of controversies, which Thompson said would result from a rule permitting direct suits, the Thompson rule induces a plaintiff, as in this case, not to settle.
McDONALD, J., concurs.