932 So.2d 1130 (2006)
Douglas N. MENCHISE, Bankruptcy Trustee in the matter of Pearl Ann McClelland, Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Appellee.
No. 2D04-5713.
District Court of Appeal of Florida, Second District.
June 16, 2006.
*1131 Richard Slawson of Slawson Cunningham & Whalen, PL, Palm Beach Gardens, and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for Appellant.
Steven L. Brannock and Maegen A. Peek of Holland & Knight LLP, Tampa, for Appellee.
NORTHCUTT, Judge.
The circuit court granted summary judgment absolving Liberty Mutual Insurance Company of a bad faith claim brought on behalf of the bankruptcy estate of Liberty Mutual's insured, Pearl Ann McClelland. We reverse because the undisputed facts did not conclusively establish that Liberty Mutual was entitled to judgment as a matter of law.
On June 5, 1996, McClelland was involved in an automobile accident with Ron Shuler. At the time, McClelland had an automobile liability policy with Liberty Mutual providing bodily injury coverage of $10,000 per person and $20,000 per accident. The day after the accident, a Liberty Mutual adjuster contacted Shuler and learned, among other things, that his neck was stiff and hurting and that he had a headache. Shuler also informed the adjuster that he had previously undergone neck surgery to have a disc removed. Shuler gave his account of the accident and maintained that he was not at fault. During this telephone conversation, Liberty Mutual's adjuster told Shuler that McClelland received a ticket after the accident and said, twice, that "we are accepting liability."
According to its file, a week after the accident Liberty Mutual recognized that liability appeared to rest with McClelland. In short order, the insurer settled the property damage claim with Shuler. Liberty Mutual later inquired whether Shuler had seen a doctor. About two months after the accident, Liberty Mutual closed the file with a notation that further contact with Shuler might invite a bodily injury claim. Ironically, on the same day that Liberty Mutual closed its file, an attorney wrote a letter to the insurer advising that he represented Shuler and requesting a statement of coverage and a copy of the policy. See § 627.4137, Fla. Stat. (1995) (requiring the disclosure under oath of certain liability insurance information on request). Liberty Mutual timely responded with information about McClelland's policy, although its response was not under oath and it did not enclose a copy of the policy.
By September, Liberty Mutual's adjuster internally characterized the case as one to "price and settle" and reserved the policy limits of $10,000. Liberty Mutual noted that the majority of liability rested with its insured with perhaps some possibility of comparative negligence by Shuler. Also, at this early date Liberty Mutual recognized that this was possibly an "excess exposure" case. Two months later, Liberty Mutual again internally characterized the claim as a "case to settle." It saw no defenses to liability, but focused on the injury and indicated an interest in obtaining authorizations to review Shuler's medical records. By December 1996, Liberty Mutual knew from a hospital lien that Shuler had incurred medical bills of $27,063.
*1132 On February 11, 1997, Shuler's attorney wrote Liberty Mutual offering to settle the claim. The letter outlined Shuler's medical condition and treatment, which included neck surgery, and enclosed bills totaling over $71,000. To settle the claim, the letter required that within twenty days Liberty Mutual must tender the $10,000 policy limits, furnish an affidavit by McClelland stating that she had no other available insurance, and give proof that McClelland was not acting in the course and scope of her employment at the time of the accident. The letter stated that settlement of the claim would only release McClelland, the owner of the automobile if different, and the insurance company.[1]
Liberty Mutual received the letter on February 17 but misplaced it. By February 28, it had the letter in hand and decided to settle the case even without the medical authorizations. Liberty Mutual did not notify McClelland of the offer for settlement, nor did it ask her about other insurance or whether she was working at the time of the accident. On March 3, the twentieth day after the settlement demand, Liberty Mutual issued a check for $10,000. It sent the check to Shuler's attorney and enclosed a copy of its standard release form.[2] It did not obtain either an affidavit from McClelland regarding other insurance or proof regarding her employment at the time of the accident. It did not indicate, by a cover letter or otherwise, why it had failed to comply with those conditions or whether it intended to do so. Soon thereafter, Shuler's attorney returned the check and rescinded the settlement offer based on Liberty Mutual's failure to timely accept it. Shuler and his wife then filed suit against McClelland.
Liberty Mutual represented McClelland in the suit and contended that a settlement had been reached when the check was mailed. The trial court disagreed, finding that there had been no meeting of the minds because Liberty Mutual had failed to comply with the other terms of the offer. After a jury verdict for the Shulers of $96,735 and a costs judgment of $4606, the issue of a settlement was raised unsuccessfully on appeal. See McClelland v. Shuler, 826 So.2d 299 (Fla. 2d DCA 2002) (table decision) (affirming judgment). McClelland later declared bankruptcy, and the bankruptcy trustee filed suit against Liberty Mutual alleging common law bad faith.
On appeal, we review a summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). When seeking summary judgment, Liberty Mutual was obliged to conclusively demonstrate on the record that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). Although the facts are largely undisputed in this case, the facts do not conclusively demonstrate that Liberty Mutual is entitled to prevail.
A common law bad faith claim against an insurance company seeks to redress an insurer's breach of its fiduciary obligation to its insured. When defending its insured against a claim, the insurer is duty-bound "to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Berges v. Infinity Ins. Co., 896 So.2d 665, 668 (Fla.2004) (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980)). The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable, and *1133 settle the claim, if possible, "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980). "[N]egligence is relevant to the question of good faith." Id.
The question of failure to act in good faith with due regard for the interests of the insured is a jury question. Id. Considerations of reasonable diligence and ordinary care, traditional issues of fact, are material. Campbell v. Gov't Employees Ins. Co., 306 So.2d 525, 530-31 (Fla.1974).
Here, Liberty Mutual accepted that McClelland was responsible for the accident as early as the next day, and it recognized the potential for an excess judgment about four months later. When an offer to settle came, approximately eight months after the accident, Liberty Mutual misplaced the offer letter. Then, when purporting to accept the settlement offer, it simply ignored some of its conditions without explanation. Indeed, Liberty Mutual did not inquire of McClelland regarding additional insurance or her employment, or even inform her of the settlement offer, until after the Shulers had filed suit against her. Given these facts, it cannot be said as a matter of law that Liberty Mutual fulfilled its duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. See Berges, 896 So.2d at 668. Accordingly, we reverse the summary judgment and remand for further proceedings.
Reversed and remanded.
WHATLEY, J., and MENENDEZ, MANUEL, JR., Associate Judge, Concur.
NOTES
[1] The parties dispute whether a release form was included with the offer letter.
[2] Liberty Mutual could not say whether the check and release were actually mailed on March 3.