969 So.2d 1150 (2007)
Mark FREEMAN, M.D., and Raphael Rodriguez, M.D., Appellants,
v.
Blossom COHEN and Abraham Cohen, Medical Protective Company of Fort Wayne, Indiana, and Family Medical Center, Inc., et al., Appellees.
Nos. 4D06-4039, 4D06-4306.
District Court of Appeal of Florida, Fourth District.
November 21, 2007.
Rehearing Denied January 2, 2008.
*1151 Richard H. Willits of Richard H. Willits, P.A., Lake Worth, for appellant Mark Freeman, M.D.
Anna D. Torres of Powers, McNalis, Torres & Teebagy, West Palm Beach, for appellant Raphael Rodriguez, M.D.
Jeffrey M. Scott, Tallahassee, for Amicus Curiae Florida Medical Association.
Brian R. Hersh and Andrew M. Teschner of Law Office of Brian R. Hersh, and Alvin N. Weinstein of Weinstein, Bavly & Moon, P.A., Miami, for appellees Blossom and Abraham Cohen.
Michele I. Nelson of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., West Palm Beach, and David Van Dyke and Brian A. Schroeder of Cassiday Schade, LLP, Chicago, IL, for appellee Medical Protective Company of Fort Wayne, Indiana.
HAZOURI, J.
Appellants, Mark Freeman, M.D. (Dr. Freeman) and Raphael Rodriguez, M.D. (Dr. Rodriguez), appeal the trial court's order granting appellees, Blossom and Abraham Cohen's (the Cohens), motion to enforce a settlement with appellee, Medical Protective Company of Fort Wayne, Indiana (Med Pro). We affirm.
On February 3, 1999, the Cohens filed suit against Humana Medical Plans, Inc. (Humana), Dr. Freeman, Mark Freeman, M.D., P.A., Rodriguez, Raphael Rodriguez, M.D., P.A., and Family Medical Center, Inc. (Family Medical). The suit alleged medical negligence by Dr. Freeman and Dr. Rodriguez, which resulted in injury to Mrs. Cohen. The Cohens ultimately withdrew their claims against Mark Freeman, M.D., P.A., Raphael Rodriguez, M.D., P.A., and Family Medical. After mediation, all of the claims against Humana were settled and the case against Humana was dismissed with prejudice. The only remaining defendants were Dr. Freeman and Dr. Rodriguez.
Med Pro insured both physicians and Walk-In Family Medical Center of Boynton Beach, Inc. (Walk-In),[1] each with policy limits of $225,000 per occurrence. The insurance policies were effective January 1, 1998. Section 627.4147(1)(b)1., Florida Statutes (2002), required the policies to include:
a clause authorizing the insurer or self-insurer to determine, to make, and to conclude, without the permission of the insured, any offer of admission of liability and for arbitration pursuant to s. 766.106, settlement offer, or offer of judgment, if the offer is within the policy *1152 limits. It is against public policy for any insurance or self-insurance policy to contain a clause giving the insured the exclusive right to veto any offer for admission of liability and for arbitration made pursuant to s. 766.106, settlement offer, or offer of judgment, when such offer is within the policy limits. However, any offer of admission of liability, settlement offer, or offer of judgment made by an insurer or self-insurer shall be made in good faith and in the best interests of the insured.
§ 627.4147(1)(b)1., Fla. Stat. (2002); see also § 627.4147(3), Fla. Stat. (2002) (stating "[t]his section shall apply to all policies issued or renewed after October 1, 1985").[2] The policies contain a clause that provides: "The Company is authorized to compromise any claim hereunder without the consent of the Insured, including any offers for admission of liability, arbitration, settlement or judgment, unless such offer and compromise is in excess of the applicable limits of liability under this policy."[3]
After mediation and several communications between the Cohens and Carol Lobacz (Lobacz), a Med Pro adjuster, the Cohens agreed to settle the claim against Dr. Freeman and Dr. Rodriguez for $335,700. The Cohens signed the settlement proposal and general release.
At around the same time the Cohens accepted the settlement offer, Dr. Freeman sent a letter to Lobacz releasing Med Pro "from any financial malpractice insurance obligations in [his] defense or settlement thereof" and stating that Med Pro no longer had authority to negotiate settlement regarding Dr. Freeman in the Cohen case. Later, Dr. Freeman sent Lobacz another letter stating that he was cancelling his policy with Med Pro, and as of that date Med Pro no longer had authority to negotiate a settlement on his behalf in accordance with paragraph 7 of the policy. That paragraph states in pertinent part: "This policy may be cancelled by the Insured by mailing to the Company or any of its authorized representatives, written notice, stating when thereafter the cancellation shall be effective."
After being informed that Med Pro settled the malpractice claim, Dr. Freeman filed a motion for leave to file a counterclaim against the Cohens. Med Pro petitioned to intervene, asserting that it held settlement discussions with the Cohens, the Cohens agreed to settle the matter for a sum certain within the policy limits, and Dr. Freeman sought to block the settlement contrary to the terms of the policy and Florida law. The trial court granted both Dr. Freeman's motion and Med Pro's petition.
Dr. Freeman then filed a counterclaim for declaratory relief asserting in part that there was a dispute as to whether the Cohens settled their claim, that he did not authorize settlement, and that the requirements of section 627.4147, Florida Statutes (2003), were not satisfied. Med Pro filed a complaint for declaratory judgment requesting the court permit it to either settle with the Cohens or terminate its obligations to Dr. Freeman and the Cohens. The trial court stayed the medical malpractice action.
*1153 The Cohens filed a motion to enforce the settlement with Med Pro. The Cohens' motion also sought dismissal of Med Pro's complaint for declaratory judgment or alternatively summary judgment in that action. The Cohens argued that as a matter of law Dr. Freeman had no right to veto the settlement under section 627.4147(1)(b)1., Florida Statutes. The trial court granted Dr. Freeman leave to amend his counterclaim and file a cross-claim for declaratory relief against Med Pro. In these pleadings, Dr. Freeman asserted he cancelled his policy, Med Pro was without authority to settle the case, Med Pro did not settle the case in good faith, and that the procedural requirements of section 627.4147 were not met.
The trial court denied the Cohens' motion after a hearing. The record does not indicate the basis for denial. The Cohens appealed the denial of their motion to enforce the settlement to this court in case number 4D04-2208. The majority opinion in Cohen v. Freeman, 914 So.2d 449 (Fla. 4th DCA 2005) ("Cohen I"), concluded that the trial court's initial decision to decline to enter a judgment of enforcement of settlement was correct due to "procedural irregularities" in the motion to enforce settlement, but that it was:
without prejudice to appellants for filing a clear motion directed to that subject only, giving proper notice of the hearing on that motion, and presenting evidence or a written stipulation to the trial court establishing the settlement and the terms thereof. Upon compliance with these procedural requirements, appellants will be entitled to immediate enforcement of their settlement by appropriate judgment.
Id. at 450.
The majority opinion also rejected Dr. Freeman's objections to the settlement and allegations of bad faith on the part of Med Pro, concluding these arguments were insufficient as a matter of law to prevent the Cohens and Med Pro from settling the medical malpractice action. Id. at 450 (citing Shuster v. S. Broward Hosp. Dist. Phys. Prof'l Liab. Ins. Trust, 591 So.2d 174 (Fla.1992); § 627.4147(1)(b)1., Fla. Stat. (2005)). The majority noted that Dr. Freeman "does not claim that the settlement prejudiced any counterclaim he had previously asserted in the malpractice action; nor does he claim that the settlement subjects him to a judgment above policy limits." Cohen, 914 So.2d at 450. The majority went on to conclude that "[t]he pending bad faith claims by the doctor may not be used to delay or impair the entitlement of the settling parties to immediate enforcement of their settlement." Id.
Upon remand, the Cohens filed a new motion for judgment enforcing settlement, attaching a copy of a stipulation between the Cohens and Med Pro. The stipulation of settlement provided in paragraph 4 that the parties to the settlement did not discuss how the settlement amount of $335,700 would be allocated among the various insurance policies issued by Med Pro to Dr. Freeman, Dr. Rodriguez, and Walk-In. Med Pro filed an identical motion.
Thereafter, the trial court held two hearings on the motion to enforce settlement. After a dispute arose over a witness at the second hearing, the trial court continued the hearing. Before the hearing, the Cohens filed a petition for mandamus in this court, claiming they were entitled to have the trial court enforce the settlement agreement without further delay based on this court's decision in Cohen I. This court denied the petition, concluding:

Cohen v. Freeman, 914 So.2d 449 (Fla. 4th DCA 2005), does not preclude the *1154 trial court from conducting an evidentiary hearing on the nature and extent of the settlement agreement and its terms. The opinion rejects Dr. Freeman's claim that he had the right to control the malpractice litigation.
Cohen v. Humana Med. Plans, Inc., 922 So.2d 1106, 1106 (Fla. 4th DCA 2006) ("Cohen II"). After an evidentiary hearing, the trial court granted the Cohens' motion to enforce the settlement with Med Pro in the amount of $335,700. This appeal followed.[4]
Although Dr. Freeman, Dr. Rodriguez, and the Florida Medical Association, as amicus curiae, (collectively "the doctors"), attempt to raise several arguments on appeal, their arguments boil down to one; that this court improperly construed section 627.4147 and Shuster in Cohen I, thus, depriving the doctors of their right to a jury trial. We disagree.
In Rogers v. Chicago Insurance Co., 964 So.2d 280, 281-82 (Fla. 4th DCA 2007), this court explained:
Rogers [, a medical doctor,] filed suit against his insurance company, claiming that it had failed to exercise good faith in its conduct of the presuit investigation and settlement. He alleged violations of both the presuit investigation procedure pursuant to section 766.106 and violation of the duty of good faith settlement in the best interests of the insured under section 627.4147. Rogers alleged that if Chicago [, the insurance company,] had properly investigated the claim, it would have discovered that the suit was completely defensible. Rogers alleged that as a result of Chicago's settlement of the claim, it refused to renew his policy of insurance, causing Rogers to pay substantially more in premiums. Chicago moved to dismiss, claiming that neither statute provided a private right of action and that Chicago's settlement within the policy limits precluded an action against it under the holding of Shuster v. South Broward Hospital District Physicians' Professional Liability Insurance Trust, 591 So.2d 174 (Fla.1992). The trial court agreed and dismissed Rogers' complaint,. . . .
This court affirmed the dismissal of Rogers's amended complaint:
We conclude that the statutory language, requiring that any settlement be in the best interests of the insured, means the interests of the insured's rights under the policy, not some collateral effect unconnected with the claim. For example, the insured may have a counterclaim in the malpractice lawsuit for services rendered, which should not be ignored. Nor should the insurer be able to settle with the claimant and leave the doctor exposed to a personal judgment for contribution by another defendant in the same case. By including the language that any settlement must be in the best interest of the insured, the legislature was merely making it clear that, although it was providing that an insured cannot veto a settlement, the power to settle is not absolute and must still be in the best interests of the insured under Boston Old Colony [Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980)] and Shuster.

Id. at 284 (footnote omitted).
In addition to our holding in Rogers, Shuster makes it clear that higher insurance premiums and damages to the insured's reputation are not examples of bad faith by the carrier in settlement of the covered claim within policy limits. 591 So.2d at 177 (concluding "in contrast to the right to settle a claim within the policy *1155 limits without considering the impact of higher premiums or damage to the insured's reputation, we do not believe the language of the contract would indicate nor do we believe it would have been the intent of the parties, that the insured give up his or her right to a counterclaim by entering into the agreement") (emphasis added). Shuster's teaching was known to the Legislature when it adopted section 627.4147(1)(b)1. The bad faith exception left open by the statute is for the exceedingly rare instance when the settlement "defeats the very purpose for which the policy was procured." Shuster, 591 So.2d at 177. The policy's purpose was indemnification and a defense of covered claims, not to protect the insured from increases in insurance premiums or damage to his reputation from a paid claim. Therefore, the only bad faith action available to the insured when the carrier settles a claim against the insured within policy limits is one alleging prejudice to a pending counterclaim of the insured or exposure of the insured to additional damages above policy limits arising from the same covered claim being settled.
Therefore, we hold, as we did in Cohen I, that Dr. Freeman and Dr. Rodriguez's bad faith arguments are insufficient as a matter of law to prevent the Cohens and Med Pro from settling the malpractice action. See Cohen I, 914 So.2d at 449-50.
Affirmed.
WARNER and KLEIN, JJ., concur specially with opinions.
WARNER, J., concurring specially.
I concur in the majority opinion, because Dr. Freeman was attempting to prevent the settlement from occurring. He was interfering with the insurance company's right to settle this malpractice action without the permission of the insured, as set forth in section 627.4147(1)(b)1., Florida Statutes. This is distinguishable from Rogers v. Chicago Insurance Co., 964 So.2d 280 (Fla. 4th DCA 2007), in which I dissented, where the doctor sued for damages for violation of section 627.4147 after a settlement was consummated.
I continue to adhere to my dissent in Rogers, but it is factually inapposite to the issue in this case. Judge Klein seeks to bolster the majority opinion in Rogers in his concurring opinion. He worries about the dilemma an insurance company may have in a case where a doctor objects to a settlement. This dilemma does not render the express statutory language "absurd." If there is a problem with the statute as written, then it is up to the legislature, not the courts, to revise its provisions.
KLEIN, J., concurring specially.
I agree entirely with the majority opinion. I am writing in response to Dr. Freeman's argument that this decision will deprive him of a bad faith remedy after this settlement is concluded. In Rogers v. Chicago Insurance Co., 964 So.2d 280 (Fla. 4th DCA 2007), the doctor objected to his medical malpractice insurer making a settlement in a case he believed was defensible. The insurer settled anyway, and in his suit for damages Dr. Rogers alleged that as a result of the settlement he had to pay substantially more for malpractice coverage. We held he had no cause of action, based on the principle that courts do not interpret statutes literally if it would lead to an "unreasonable or ridiculous conclusion." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). I am writing to explain why I think such an interpretation of the statute would lead to "unreasonable or ridiculous" results.
If we allow doctors to sue for damages such as increased malpractice insurance premiums, where the insurer settles over *1156 the doctor's objection, it would, in my opinion, bring an abrupt end to the settlement of all malpractice cases whenever the doctor objects. Consider the present case, in which Dr. Freeman has $225,000 policy limits. If he, when an insurer settles a claim over his objection, can sue for damages for having to pay higher premiums or inability to obtain malpractice insurance, the damages could easily exceed the policy limits. Under these circumstances no insurer would settle, because if it did it could be exposed to unlimited damages. The only safe course of action would be for an insurer to accede to the doctor's wishes and not settle, because then its liability would not exceed the policy limits.
That is precisely what has occurred in this case. The claimant and the insurer agreed on an amount to settle in June, 2003, for this 1995 incident, but, because Dr. Freeman sued, the claimant is still waiting for her money. Insurance companies must be able to control risk, and the only way they can control risk, and not expose themselves to unlimited types or amounts of damages, is to not settle if the doctor objects. I cannot imagine why a medical malpractice insurer would even write coverage in Florida under that scenario.
There is another problem with allowing this cause of action. Assume that the insurer settles with the claimant over the objection of the doctor, and the doctor then sues for increased premiums, inability to get insurance, loss of hospital staff privileges, all of which could directly result from the settlement. If such a case were to go to trial, how does a jury resolve the issue? Does it balance the merits of settling the malpractice claim against the collateral effect of the settlement on the economic well being of the doctor? Those two things are no more comparable than apples and oranges. How does a jury value one over the other?
And what about the claimants who have been injured through malpractice? In the present case the claimant may well have relied on the fact that Dr. Freeman had malpractice insurance. Dr. Freeman, however, not only objected to any settlement and filed this lawsuit to stop a settlement, but also tried to cancel his insurance, after the incident, retroactive to before the incident. In other words, Dr. Freeman took the position that he could cancel his insurance after the incident and leave himself without insurance coverage for the incident. I assume that Dr. Freeman, like many South Florida doctors, has made himself judgment proof and purchased low limits primarily to cover the costs of defending claims. Otherwise why would Dr. Freeman cut off his nose to spite his face?
Considering all of the problems our legislature has grappled with involving medical malpractice and insurance, I cannot imagine that it could have intended to expose insurers to new unspecified damage claims when it enacted the statute. Although I recognize that the principle of not literally interpreting a statute where it would lead to an absurd result should be used sparingly, we were correct in applying that principle in Rogers and here.
NOTES
[1] Walk-In is the correct name of the Family Medical Center.
[2] The statute was amended in 2003. It applies "to all policies issued or renewed after October 1, 2003." § 627.4147(3), Fla. Stat. (2003). However, the subsection in question is unchanged. See id.; § 627.4147(1)(b)1., Fla. Stat. (2003).
[3] These policies were claims-made policies in which coverage was effective if the negligent act or omission was discovered and brought to the insurer's attention within the policy term.
[4] Dr. Freeman and Dr. Rodriguez's separate appeals have been consolidated.