[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12816

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-20710-CV-AJ

GABINA MALDONADO,
Personal Representative of
the Estate of Alvin Maldonado,

Plaintiff-Appellant,

versus

THE FIRST LIBERTY INSURANCE CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 17, 2009)

Before EDMONDSON, BLACK and SILER,* Circuit Judges.

_____
*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge:

## INTRODUCTION

Plaintiff Gabina Maldonado, on behalf of the estate of her husband, Alvin Maldonado ("the Estate"), appeals from the district court's order granting summary judgment for defendant First Liberty Insurance Corporation in this bad-faith action. For the following reasons, we affirm.

## I.

Alvin Maldonado was killed in a car accident caused by First Liberty's insured, Julia Clinche. After the accident, the Estate offered to settle the claim against Julia Clinche (and her husband, Carlos Clinche, owner of the car). The settlement was conditioned upon receipt of two items: $25,000 (which represented the First Liberty policy limits), and an affidavit establishing the extent of the Clinches' assets. Although First Liberty offered to tender the $25,000 in exchange for a release of the Clinches, the Clinches refused to submit an asset affidavit as requested by the Estate, provoking the Estate to withdraw the settlement offer and sue the Clinches. That suit resulted in a court-approved settlement, which provided that the only litigation in the matter would be a bad-faith action by the Estate against First Liberty. A three million dollar stipulated final judgment was

2

entered against the Clinches, of which First Liberty paid $25,000, and execution of the excess judgment was stayed until final resolution of this suit.

This bad-faith action followed, and after discovery was completed, the parties cross-motioned for summary judgment. The district court found that as a matter of law, First Liberty had not acted in bad faith, and granted First Liberty's motion. The Estate appeals, arguing that the district applied an incorrect legal standard with respect to the standard of care, and erred in finding no genuine issue of material fact as to whether First Liberty acted in good faith.

## II.

"We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court." Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). Both parties agree Florida law applies in this diversity suit.

The district court did not err when it found there was no bad faith on the part of First Liberty because the Estate has failed to prove two essential elements of a bad-faith claim: that the insurer's actions caused the excess judgment, and that the insurer breached the applicable standard of care.

## III.

Under Florida law, a bad-faith action against an insurer is based on statute and common law. See Fla. Stat. Ann. § 624.155(1)(b)(1) (West 2009); Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). When third-party insurance claims are involved, bad-faith actions may be brought by the claimant directly against the insurer. See Thompson v. Comm. Union Ins. Co. of N.Y., 250 So.2d 259, 264 (Fla. 1971). This rule has been limited so that claimants may only bring a bad-faith action if the insured would be able to bring the action against its insurer, because the claimant is stepping into the shoes of the insured. See Fidelity and Cas. Co. of N.Y. v. Cope, 462 So.2d 459, 460-61 (Fla. 1985). "Thompson did not remove the requirement that recoverable damages be sustained by the insured as a result of the bad faith of the insurer. It merely allowed the judgment creditor to step into the shoes of the insured and bring an action without an assignment by the insured." McLeod v. Cont'l Ins. Co., 591 So.2d 621, 625, n.6 (Fla. 1992), superseded on other grounds by statute, Fla. Stat. § 627.727.

## A.

Both the bad-faith statute and common-law precedents establish that, as a prerequisite to bringing this suit, the Estate would have to show that the excess judgment against the Clinches was caused by First Liberty's bad faith. Here, the

cause of the excess judgment was the Clinches' failure to execute the asset affidavit. From the first communication of the settlement offer and in three subsequent letters to the Clinches, First Liberty warned the Clinches that if they did not provide the affidavits, the Estate would not release them. In his deposition, Mr. Clinche stated that he did not supply the information because he did not know that he could trust the person who requested the information. He also repeatedly stated that he felt that the request for asset information was unjustified given that his wife "wasn't even found guilty of anything yet," that the Estate's attorney was "playing games," and that asking for the information was a pointless exercise, given that he had no assets that could be used to satisfy an excess judgment.

This record shows that First Liberty communicated the risks of an excess judgment, and that Mr. Clinche's refusal to execute the affidavit was based on his own belief that doing so would be pointless, not because he did not understand the consequences of a default judgment. Given that, no reasonable juror could find that the cause of the failure to settle was attributable to First Liberty.

**B.**

Both parties agree that the applicable standard of care in this bad-faith context comes from <u>Gutierrez</u>: "[t]his good faith duty obligates the insurer to

5

advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." 386 So.2d at 785 (internal citations omitted). The Estate asserts that the district court used an improper legal standard, because the court added an element that in order to show bad faith one must prove that the insurer put its interest above the insured.

The district court applied the correct standard and found that First Liberty did what was required under the Gutierrez standard–it communicated with the Clinches about the settlement opportunity and repeatedly warned them that failure to submit the affidavit would risk an excess judgment. The district court also correctly found that the insurer's conduct was similar to the insurer's conduct in Gutierrez. That case found "the insurer was ready to settle, expressed its willingness to settle, and only because of the explicit request of its own insured did not settle," and therefore held that a finding of bad faith was precluded as a matter of law. Id. at 786.

As the Florida Supreme Court has explained, "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." Berges v. Infinity Ins. Co., 896 So.2d 665, 677 (Fla. 2005). Here, First Liberty twice offered to settle within the policy limits,

conditioned on release of its insureds. It also tendered a check for the $25,000 policy limit, along with a release, to the personal representative of the Estate before the Estate withdrew its offer to settle within the policy limits. Given this, there could be no genuine issue of material fact concerning whether First Liberty acted in bad faith.

AFFIRMED.