[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10687

_____

D.C. Docket No. 4:12-cv-00577-WS-CAS

EDITH COULTER,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 15, 2015)

Before MARTIN and ROSENBAUM, Circuit Judges, and COOGLER,[*] District
Judge.

COOGLER, District Judge:

_____

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

## I.    INTRODUCTION

Appellant Edith Coulter appeals the district court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company. The dispute arises out of a collision between Coulter and another motorist. Coulter contends that genuine issues of material fact exist that preclude summary judgment. After a thorough review of the matter, we affirm.

## II.    BACKGROUND

### A.    FACTUAL HISTORY

On March 20, 2009, Coulter was seriously injured in a collision with Victor Huszagh. At the time, Huszagh was insured by State Farm and had accident-related bodily injury ("BI") coverage up to $50,000. Huszagh reported the accident to State Farm, and State Farm began its response the following Monday, March 23, 2009, by assigning claims representative Leslie Shannahan to the claim.

State Farm made three attempts to provide Coulter with a check for the full BI policy limits, the first time less than two weeks after the accident. State Farm also made numerous attempts to contact Coulter in the months that followed, but was only successful in speaking with her son Bradley Coulter twice. Finally, on August 11, 2009, attorney Stephen Marino prepared a letter to Shannahan advising her that he represented Coulter concerning the BI claim. Coulter had hired Marino on April 24, 2009, but State Farm did not learn of the representation until it

2

received the letter. The letter made four demands of State Farm in settlement of Coulter's claims against Huszagh: 1) comply with the statutory policy disclosures required by Florida Statute § 627.4137; 2) provide a written summary of all the information State Farm had obtained from Bradley Coulter; 3) provide an affidavit from Huszagh "confirming that he has no additional insurance coverage that could be used to pay for the losses that he caused;" and 4) tender a draft for full policy benefits made payable to Coulter and Ver Ploeg & Lumpkin, P.A., Marino's law firm. State Farm asserts that it did not receive the letter until August 26, 2009.

On August 26, State Farm began preparing its response to the letter. Shannahan sent Marino a letter, dated August 28, which: 1) provided a summary of her conversations with Bradley Coulter; 2) acknowledged that Marino wanted an affidavit from Huszagh; 3) asked if Marino had an affidavit he wanted Huszagh to use; 4) enclosed a draft for $50,000; and 5) stated that a complete policy disclosure would follow separately. State Farm team leader Tim Scott sent a letter, dated August 31 and signed under penalty of perjury, stating Huszagh's policy limits and denying knowledge of any umbrella or excess coverage. According to his affidavit, Scott verified that copies of the applicable declarations page, policy booklet, and endorsements were enclosed with the letter. Marino denies that these documents were actually enclosed when he received the letter, but made no attempt to advise State Farm that the policy was not in fact attached.

3

In a letter dated September 4, 2009, Marino informed Shannahan that he would not draft an affidavit for Huszagh to sign, insisting instead that Mr. Huszagh "would be in the best position to provide the information needed." In response, Shannahan contacted attorney Dwane Tyson to prepare the requested affidavit. On September 11, Tyson forwarded to Shannahan an affidavit stating that no other insurance policy was in effect on Huszagh's vehicle at the time of the accident; Shannahan faxed the affidavit to Huszagh with instructions to execute it if correct and mail the original to Marino. Huszagh executed the affidavit, and his secretary mailed it to Marino the next day.

In a letter dated September 14, 2009, Marino returned State Farm's check, stating that State Farm had failed to timely comply with the terms of his settlement offer by failing to provide a suitable affidavit and a certified copy of the insurance policy along with the applicable declarations page. Marino also enclosed a copy of the complaint that he filed that day in state court on behalf of Coulter against Huszagh. Marino asserts that he did not receive Huszagh's affidavit until September 15, 2009, after the suit was filed, but maintains that the affidavit was both untimely and unsatisfactory because it did not match the wording or purpose of the request in Coulter's settlement demand. Coulter ultimately settled that case against Huszagh. As part of the agreement, a consent judgment was entered in Coulter's favor for two million dollars, and Coulter received Huszagh's rights in

4

any claim Huszagh then possessed against State Farm based on its failure to settle Coulter's claim.

### B.    PROCEDURAL HISTORY

Coulter filed her complaint against State Farm in the U.S. District Court for the Northern District of Florida on October 31, 2012, alleging that State Farm acted in bad faith by failing to settle her claim. Both parties submitted cross-motions for summary judgment. On January 16, 2014, the district court found that State Farm was entitled to summary judgment and entered judgment in its favor on all claims.

## III.   SUMMARY JUDGMENT

The Court reviews the entry of summary judgment *de novo*, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012). Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Further, an appellate court may affirm a judgment on any grounds that appear in the record, "whether or not that ground was relied upon or even considered by the court below." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

In Florida, when an insurance company handles claims against its insured, it "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 2d 893, 898 (Fla. 2010) (quoting *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 668 (Fla. 2004)). Included in this duty is "an obligation to settle 'where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" *Id.* (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). Breach of that duty may give rise to a cause of action for bad faith. *Id.*

The bad faith standard requires an examination of the totality of the circumstances, and therefore is ordinarily a question for the jury. *Berges*, 896 So. 2d at 687. However, "the issue of bad faith may be determined as a matter of law" when the relevant facts are undisputed. *Id.* While negligence is relevant to the determination of bad faith, Florida law is clear that the standard "for determining liability in an excess judgment case is bad faith rather than negligence." *Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974).

As an initial matter, Coulter has argued that the district court applied the wrong legal standard to the facts of this case. However, as we review the grant of summary judgment *de novo*, it is not necessary for this Court to address the

6

standard applied by the district court because judgment for State Farm was clearly proper under the correct standard.

In this case, State Farm tendered the complete policy limits to Coulter three separate times, the first time less than two weeks after the accident. Even though Marino had been hired by Coulter in April, Marino did not inform State Farm of his employment until the letter he sent setting forth Coulter's settlement demands. The only time constraint referenced in the letter was the statement that Marino would give State Farm "the time provided" by Fla. Stat. § 627.4137 to make the disclosures necessary under that statute. Nothing in the letter indicated that the statutory deadline applied to the other demands as well. Any failure in exactly matching the terms of Coulter's settlement demands was, at most, negligent. The district court's finding of summary judgment was proper as no reasonable jury could find that State Farm had failed to settle in bad faith.

It is clear that State Farm was acting with reasonable care and diligence, and was in good faith attempting to fulfill its obligation to settle "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony Ins. Co.*, 386 So. 2d at 785. After determining the extent of Coulter's injuries, State Farm attempted to tender the full policy amounts in order to settle the claim multiple times. When it received Coulter's settlement demand, it made reasonably diligent attempts to comply despite the lack of cooperation by

Coulter and Marino. The fact that State Farm was unable to successfully reach a settlement within the undisclosed time limit set by Coulter and Marino does not create a genuine issue of material fact which would require that the issue of bad faith be submitted to a jury.

**AFFIRMED**.