[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13356

_____

D.C. Docket No. 8:13-cv-01569-SCB-AEP

JOSHUA MOORE,

Plaintiff-Appellant,

versus

GEICO GENERAL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 12, 2016)

Before WILSON, WILLIAM PRYOR, and GILMAN,∗ Circuit Judges.

--------

∗ Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

GILMAN, Circuit Judge:

This diversity-of-citizenship case raises the question of whether GEICO General Insurance Company acted in bad faith when it failed to settle an insurance claim within the applicable policy limits. Because the parties are familiar with the underlying circumstances and because this opinion is unpublished, we will set forth only a brief summary of the key facts.

## I.  BACKGROUND

In May 2010, Joshua Moore was driving in Florida when he became engaged in an exchange of offensive hand gestures with another motorist. As part of this incident, the other motorist intentionally swerved into the side of Moore's pickup truck. This caused Moore to lose control of his truck, which then crossed the centerline and crashed into a car driven by Amy Krupp. Moore, Krupp, and Krupp's minor son AO each sustained injuries, with Krupp later dying as a result of the crash.

At the time of the accident, Moore was insured under a GEICO insurance policy issued to Moore's parents. GEICO investigated the accident and quickly realized that Moore's liability could easily exceed the policy's $20,000 personal-injury limit. It thus offered to settle the potential claims against Moore by

2

promptly tendering a $20,000 check to Lance Holden, the lawyer who had been retained to represent the Krupp estate and AO.

The resulting settlement negotiations did not go smoothly. Holden responded that his clients would accept the $20,000 only if GEICO provided (1) affidavits from the Moores establishing that they had no other applicable insurance policies, and (2) a precisely worded release-of-claims document for Holden's clients to sign. Neither the affidavits nor the release that GEICO subsequently transmitted to Holden complied with Holden's demands. Holden thus treated GEICO's submission as (1) a rejection of his settlement offer, and (2) a counteroffer for settlement on new terms. He then rejected the new settlement offer and stated that he would pursue bodily-injury claims on behalf of Krupp's estate and AO. Holden followed through by filing suit against the Moores in August of 2010.

The suit resulted in a $4 million verdict in favor of Krupp's estate and AO. In response, Moore filed a bad-faith claim against GEICO in the United States District Court for the Middle District of Florida. He alleged that GEICO had acted in bad faith by failing to settle the claims of the Krupp estate and AO within the applicable policy limits when GEICO had the opportunity to do so. Among other failings, he noted that GEICO had not complied with Holden's demands for the affidavits and the proposed release.

The district court granted summary judgment in favor of GEICO.  Although the court noted that GEICO's conduct was "sloppy" and "bordering on negligent," the court determined that this conduct did not rise to the level of bad faith.   In addition, the court extensively discussed Holden's conduct.  It concluded that Holden had attempted to manufacture an artificial bad-faith claim by creating unnecessary obstacles to GEICO's settlement of the claims against the Moores. The court thus attributed the failure to settle to Holden, thereby absolving GEICO of liability.

Moore now appeals.  He maintains that the district court erred by failing to construe the factual record in the light most favorable to the nonmovant, i.e., to Moore himself, and he asserts that the court applied an erroneous understanding of the law governing Moore's bad-faith claim.

## II.  ANALYSIS

### A.    Standard of review

A district court's grant of summary judgment is reviewed de novo. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).  Summary judgment is appropriate if there is no genuine dispute regarding any material fact and if the moving party is entitled to judgment as a matter of law.  *Id.*  We must view all the evidence and draw all reasonable factual inferences in favor of the

4

nonmovant.  *Id.*  "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also, e.g.*, *Strickland*, 692 F.3d at 1154 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (internal quotation marks omitted)).

## B.    The law of bad-faith claims in Florida

The Florida Supreme Court explained the basis of bad-faith claims in *Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004):

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.  For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.  The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Id.* at 668-69 (alteration omitted) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)).  GEICO in the present case thus had a duty to act "with due regard for the interests of [Moore]" and to manage the claims against

Moore with "the same degree of care and diligence" that GEICO would have used in managing its own business. *See id.*

To assess whether GEICO fulfilled this duty, we must review the "totality of the circumstances." *Id.* at 680 ("In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard."). Our focus, however, must remain on the actions of the insurer. *Id.* at 677 ("[T]he focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured.").

One of the circumstances relevant to the bad-faith inquiry is the insurer's overall level of competence. True enough, simple negligence in handling an insured's case has been held to be insufficient in and of itself to establish bad faith. *See King v. Nat'l Sec. Fire & Cas. Co.*, 656 So. 2d 1338, 1339 (Fla. Dist. Ct. App. 1995) ("[Appellant's argument] is contrary to the well-established law in Florida that only allows an insured to sue an insurer for bad faith and not simple negligence." (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783 (Fla. 1980); *Thomas v. Lumbermens Mut. Cas. Co.*, 424 So. 2d 36 (Fla. Dist. Ct. App. 1982))). Nevertheless, an insurer's negligence is a relevant consideration that affects the overall assessment of the insurer's conduct. *Boston Old Colony*, 386 So. 2d at 785 ("Because the duty of good faith involves diligence and care in the

6

investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith."); *Berges*, 896 So. 2d at 669 (same).

A court assessing a bad-faith claim may in some instances resolve the claim on summary judgment. *Berges*, 896 So. 2d at 680 ("[T]his Court and the district courts have, in certain circumstances, concluded as a matter of law that an insurance company could not be liable for bad faith."). In most cases, however, the inherently flexible nature of the "totality of the circumstances" standard renders a bad-faith claim unsuitable for summary disposition. *Id.* ("[T]he issue of bad faith is ordinarily a question for the jury . . . ."); *see also id.* at 672 ("[I]nsurance bad faith law . . . generally reserves the question of bad faith for the jury.").

## C. Disputed factual issues preclude a grant of summary judgment in this case

After reviewing the "totality of the circumstances" in this case, *see id.* at 680, we conclude that the record contains factors both contradicting and supporting Moore's allegation that GEICO acted in bad faith. This case—like most bad-faith cases, *see id.*—therefore presents a genuine dispute that requires resolution by a jury.

### 1. Factors contradicting a conclusion that GEICO acted in bad faith

As noted above, GEICO quickly realized that Moore's potential liability in this case would likely exceed his policy limits. GEICO thereafter promptly sought

to settle the claims against Moore.  This conduct included (1) informing the Moores that Holden had made a settlement demand, (2) tendering to Holden a check for the full amount of Moore's policy limits within days of the accident, (3) advising the Moores that certain affidavits and a release-of-claims document would need to be submitted to Holden, and (4) reiterating that GEICO remained open to settlement even after Holden had rejected the affidavits and proposed release of claims.

These efforts to reach a settlement have been previously identified by the Florida courts as relevant to the bad-faith analysis.  *See, e.g.*, *Berges*, 896 So. 2d at 669 (analyzing whether the insurer "[gave] fair consideration to a settlement offer" (citation omitted)); *Boston Old Colony*, 386 So. 2d at 785 (listing as relevant whether the insurer "advise[d] the insured of settlement opportunities" and "advise[d] the insured of any steps he might take to avoid [excess liability]").  GEICO's activities in this case thus involved a substantial amount of conduct that supports the proposition that it acted in good faith to settle the claims against Moore within the policy limits.

### 2.  *Factors supporting a conclusion that GEICO acted in bad faith*

On the other hand, GEICO's conduct in this case could be viewed as proof that GEICO did not act in good faith.  In particular, GEICO (1) failed to provide the Moores with a copy of Holden's demand letter, (2) did not ensure that the

affidavits that it prepared for the Moores met the requirements of Holden's demand letter, and (3) did not heed Holden's demand for a precisely worded release of his clients' claims. Indeed, the district court itself concluded that GEICO's handling of these aspects of the claims against Moore was "sloppy" and "bordering on negligent."

These failures thus suggest that GEICO did not handle Moore's case with the same degree of care and diligence that GEICO would have used to handle its own affairs, and these failures accordingly could support a conclusion that GEICO acted in bad faith. *See, e.g.*, *Boston Old Colony*, 386 So. 2d at 785 ("An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business"); *see also id.* ("Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.").

## D.    The district court's errors

Despite the above-identified evidentiary conflict, the district court granted summary judgment in favor of GEICO. We conclude that the court committed two errors in doing so. First, the court made credibility determinations and weighed the evidence in ways that are improper at the summary-judgment stage of the case.

Second, the court erroneously focused on the conduct of the Krupp estate's attorney, Holden, rather than on the conduct of GEICO.

### 1. Credibility determinations and the weighing of the evidence

The district court discounted the probative force of GEICO's failure to comply with the terms of Holden's settlement demands.  It did so because the court perceived those terms as a calculated attempt by Holden to manufacture an artificial bad-faith claim rather than as a legitimate attempt to settle his clients' case.

During Holden's deposition, however, he explained the basis for his demands.  He stated that the affidavits establishing that no other insurance existed were "very important" because he had previously been involved in cases in which insurance companies had misrepresented the amount of available coverage.  Holden then explained that the precise language with regard to the release of claims was important because he did not want to unintentionally release a previously unknown claim that might exist against a party such as GEICO itself.

Finally, Holden testified that his intention in sending the demand letter was in fact to effectuate a settlement.  He explained that he had his clients' authority and permission to send it out, and that if GEICO had "compl[ied] with what is in the letter, . . . then [there would have been] an opportunity to resolve the case." Holden further noted that he had settled his clients' claims against the other

10

motorist involved in the accident when that motorist's insurance carrier complied with the same demands as those made on GEICO.

The district court discounted this testimony. It concluded that—despite Holden's statements to the contrary—Holden's demand was "based more on the creation of a bad faith claim against GEICO than on truly attempting to settle [the Krupp estate's and AO's] claims."

This conclusion contravenes the role of the court in ruling on a motion for summary judgment. A court ruling on such a motion must "view all evidence and draw all reasonable factual inferences in favor of the nonmoving party." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The district court in this case thus should have credited Holden's testimony and accepted—for the purposes of GEICO's motion for summary judgment—that Holden legitimately tried to settle the case. *See id.*; *accord, e.g.*, *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("[T]he non-movant's evidence is to be accepted for purposes of summary judgment."). Viewed in this light, GEICO's failure to meet the demands of Holden's settlement offer impeded the parties' ability to settle the case against Moore. This evidence should therefore have been considered by a jury in assessing whether the totality of GEICO's conduct amounted to a good-faith effort to settle the case.

11

The district court also improperly weighed the value of other evidence.  In particular, Moore opposed GEICO's motion for summary judgment in part by submitting expert testimony that evaluated GEICO's conduct in this case.  Moore's expert testified that GEICO's handling of the claims against Moore deviated from industry standards in several key respects and that GEICO had indeed acted in bad faith.

Although the district court acknowledged that GEICO's conduct was careless, it made no mention whatsoever of the expert's testimony or the expert's ultimate conclusion.  This means that the court either (1) ignored the testimony altogether, or (2) implicitly determined that the testimony was not credible.  In either case, the court erred.  *See Strickland*, 692 F.3d at 1154 ("[A district court] must consider *all evidence* in the record when reviewing a motion for summary judgment . . . and can only grant summary judgment if *everything in the record* demonstrates that no genuine issue of material fact exists" (emphasis added) (brackets and internal quotation marks omitted)); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006) ("Credibility determinations at the summary judgment stage are impermissible.").

GEICO maintains on appeal that the failure to credit the expert testimony was irrelevant because the expert "provided nothing more than opinions," which, according to GEICO, cannot create a genuine dispute of material fact.  This

proposition is simply incorrect. *See, e.g.*, *Newmann v. United States*, 938 F.2d 1258, 1262 (11th Cir. 1991) ("[W]e have expert testimony here that concludes that Dr. Lawrence's treatment was not an acceptable and customary method, and in fact was a violation of the standard of care. In other words, the evidence does create a genuine issue of material fact . . . ." (alterations and internal quotation marks omitted)); *Childers v. Morgan Cnty. Bd. of Educ.*, 817 F.2d 1556, 1559 (11th Cir. 1987) ("This recitation of the expert testimony is only meant to illuminate the fact that there is a genuine issue of material fact regarding the merits of this dispute, regardless of what inexpert intuition may be."); *Allison v. W. Union Tel. Co.*, 680 F.2d 1318, 1322 (11th Cir. 1982) ("[The plaintiff's evidence] was rebutted by Western Union's expert witness, Dr. Phillip Carlson. . . . This rebuttal raised a genuine issue of fact . . . ."). The expert testimony in this case therefore did create a genuine dispute of material fact, and the district court should not have ignored such testimony in granting GEICO's motion for summary judgment.

### 2. The district court's focus on Holden

As previously noted, the law of bad faith in Florida requires that a court "focus . . . not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 677 (Fla. 2004). Hence, the district court in the present case should have focused principally on GEICO's handling of the claims against Moore.

13

The district court did not do so.  Instead, the court throughout its opinion faulted Holden—rather than GEICO—for allegedly impeding the settlement negotiations.  It noted on several occasions that GEICO's conduct was careless, but it then repeatedly stated that any harm done could have been repaired if Holden had "simply picked up the phone and addressed the deficiencies."

The court also focused on Holden's purported motives.  It concluded that Holden was more interested in the "creation of a bad faith claim against GEICO" than he was in settling the case and, as noted above, it looked beyond Holden's deposition testimony to infer that Holden's rejection of the affidavits and the proposed release of claims was not based on legitimate reasons.

In sum, the district court's analysis focused primarily on Holden.  The court thus absolved GEICO of liability by faulting Holden's conduct and Holden's motives.  This contravenes the law of bad faith in Florida, *see Berges*, 896 So. 2d at 677, and the court accordingly erred.

That error and the other errors identified above ultimately require us to reverse the judgment of the district court and remand this case for a jury trial.  In the end, Moore might not prevail on his bad-faith claim.  There are, after all, numerous aspects of the record that support the conclusion that GEICO acted in good faith.  *See* Part II.C.1.  But there are also aspects of the record that contradict that conclusion, *see* Part II.C.2, and this is precisely the sort of situation in which

14

Florida law makes clear that a jury trial is necessary. *See, e.g.*, *Berges*, 896 So. 2d at 672 ("[I]nsurance bad faith law . . . generally reserves the question of bad faith for the jury.").

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.